GENERAL ELECTRIC Co. *v*. UNITED STATES (No. 1429).[1]

PARABOLIC MIRRORS—CAST, POLISHED PLATE GLASS, SILVERED, AND BENT.
    The testimony in this case establishes without contradiction that the parabolic mirrors of the importation are cast, polished plate glass, silvered, and bent. They were dutiable with their frames, if any there were, as provided by paragraphs 103 and 104, tariff act of 1909.

United States Court of Customs Appeals, February 23, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36035 (T. D. 34609).

[Reversed.]

*McLaughlin, Russell, Coe & Sprague* (*Robert H. Hillis* of counsel) for appellant.
*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

At the port of Albany, N. Y., eight parabolic mirrors were classified by the collector of customs as articles of glass, ground and silvered, and assessed for duty at 60 per cent ad valorem under that part of paragraph 98 of the tariff act of 1909 which reads as follows:

98. Glass bottles, decanters, and all articles of every description composed wholly or in chief value of glass, * * * silvered or ground, * * * sixty per centum ad valorem.

---

The importer protested, first, that the goods were dutiable at 11 cents per square foot and 5 per cent ad valorem as cast polished plate glass, silvered, and bent, under paragraphs 103 and 104 of the tariff act of 1909; second, that they were dutiable at 45 per cent ad valorem as manufactures of glass under paragraph 109; and, third, that they were dutiable either at 10 or 20 per cent ad valorem as nonenumerated unmanufactured or manufactured articles under paragraph 480. The paragraphs upon which the importer actually relied, however, were paragraphs 103 and 104, which, in so far as pertinent to the case, read as follows:

103. Cast polished plate glass, silvered, * * * and looking-glass plates, exceeding in size one hundred and forty-four square inches and not exceeding three hundred and eighty-four square inches, eleven cents per square foot; * * *: *Provided*, That no looking-glass plates or plate glass, silvered, when framed, shall pay a less rate of duty than that imposed upon similar glass of like description not framed, but shall pay in addition thereto upon such frames the rate of duty applicable thereto when imported separate.

104. Cast polished plate glass, silvered * .* *, polished * * *, when bent, ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, or decorated, shall be subject to a duty of five per centum ad valorem in addition to the rates otherwise chargeable thereon.

The Board of General Appraisers overruled the protest and the importers appealed.

The mirrors, duty upon which has been made the subject of protest, have a concave reflecting surface and are designed to be used as reflectors in the manufacture of searchlights. On the hearing, the importers, in support of their contention that the parabolic mirrors or reflectors were cast polished plate glass, silvered, and bent, introduced the deposition of Dr. Freidrich Bernhard Kalkner, of Nürnberg, Germany. This witness deposed that he was chief engineer of the searchlight department of the Siemens-Schuckert Werke, of Nürnberg, and that in that capacity he supervised the manufacture of silvered plate glass with curved surfaces intended for searchlights. He positively declared that from his personal knowledge the merchandise in controversy was made from bent plate glass, polished and silvered. He identified the official sample as truly representative of both the material and physical condition of a piece of parabolic-shaped glass produced by the Siemens-Schuckert Werke, and stated that articles such as those represented by the sample are produced by bringing glass in a metal mold to a plastic condition by the application of heat, in which condition the glass, bent by the force of gravity, assumes the degree of curvature corresponding to the surface of the metal mold. The glass is then annealed and, if found perfect, is polished and silvered.

The witness also stated that the processes employed in manufacturing parabolic mirrors such as those in question are identical with those employed in the manufacture of plate glass, silvered, and having a plane surface, with the exception that in the manufacture of the latter the polishing tools are carried along a plane surface, whereas in the manufacture of the former such tools are applied to a curved surface.

The Government introduced no testimony, and the board's finding that the merchandise imported is not cast polished plate glass, bent, and silvered is apparently based exclusively on the testimony of George W. Wolf, a Government examiner, called by the importers. That witness testified that it was a hard matter to tell whether the piece of glass received in evidence as representative of the merchandise was a piece of plate glass or whether it had been ground down. He said, in effect, that parabolic mirrors were made either by bending plate glass or by grinding a large piece of glass to the "convexity" required and that mirrors made by grinding out the glass to the proper "convexity" were ten times more valuable than those made from plate glass, bent. He declared that a more accurate form could be given to the mirror by grinding than by heating and bending it. He would not say, however, that the mirrors under consideration were not bent, and he was not certain that they were ground to form, although they looked as if they were, but that judging from the invoice price of the goods he was of opinion that the goods were ground parabolic and not plate-glass mirrors. In answer to a question of General Appraiser Fischer as to his understanding of the term "plate glass," Mr. Wolf stated that plate glass is glass which has been first rolled on a large plate and flattened out to an even surface. With nothing more done to it than rolling out, the glass is known as rough plate, but when it has been ground and polished it becomes polished plate glass. To sustain the finding of the board would require us to reject the positive direct testimony of Dr. Kalkner, under whose supervision the mirrors were made and to accept the mere opinion of the Government examiner, who frankly admitted that he could not say whether the official exhibit was plate glass, bent, or glass ground to the form of a parabolic mirror. That course we do not think we ought to take, inasmuch as the testimony of Dr. Kalkner has been neither impeached nor contradicted and is in our opinion wholly consistent with itself and the physical characteristics established by the exhibit in evidence.

The testimony of the Government examiner that plate glass was glass which had been rolled or flattened to a plane surface, that plate-glass mirrors could not be accurately made and would not command the price at which the goods imported were invoiced, and that not one mirror in a hundred was made of plate glass, was, we think,

given more weight by the board than it was entitled to receive. The tariff act itself recognizes that there is such a thing as a cast polished plate glass of which a bent and not a plane surface is the characteristic. The merchandise in controversy, as shown by the uncontroverted testimony of the man under whose supervision it was made, conforms to that tariff description, and consequently the importation ought not to have been excluded from the operation of paragraphs 103 and 104 on a definition which confined polished plate glass to glass which had been rolled to a plane surface and polished. As the Government examiner was apparently unaware of the fact that parabolic mirrors could be and were molded, and that they were produced by the identical processes employed in the manufacture of plate glass with a plane surface, but little if any weight can be given to his estimate of the value of such mirrors or to his statement that plate-glass mirrors are not as accurate as ground mirrors and that not one mirror in a hundred is plate glass. Whether the mirrors were plate glass he admitted he did not know, and whether every point in the same horizontal plane of their concave surface was or was not equidistant from the center he had no means of knowing, and consequently it was not within his province to say that the mirrors were or were not plate glass or that they were not accurately made.

The board not only found that the imported goods were not plate glass, but went further and found that they were glass blown either in a mold or otherwise. Standing alone, the testimony of the examiner might have afforded some slight basis for a finding that the goods were not plate glass, but just how the board reached the determination that the merchandise was some form of blown glass we are at a loss to understand. Certainly there was nothing either in the testimony of the witnesses or in the evidence presented by the exhibit which would warrant any such conclusion.

The contention of the Government that paragraphs 103 and 104 do not cover articles made of plate glass and are limited to such plate glass as is still in the condition of a material we do not think is well founded. Paragraph 103 not only provides for certain sizes of looking-glass plates and cast polished plate glass silvered, but also for such plate glass and looking-glass plates when framed, and that language, we think, is surely broad enough to include a class of finished looking glasses and plate-glass mirrors. Paragraph 104 provides for cast polished plate glass, silvered or unsilvered, when bent, ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, or decorated, and imposes on such merchandise a duty of 5 per cent ad valorem in addition to the rates otherwise chargeable thereon. That paragraph, it would seem, enumerates about every process to which polished plate glass may be subjected, and, as the extent to which

such processes may be applied does not appear to have been limited, we can not believe that Congress intended that the very complete elaboration provided for should stop at the creation of a material and never achieve the production of a finished article. In our opinion, whether a material or a finished article is evolved by the processes contemplated by paragraphs 103 and 104, the product, if it be within the description of those paragraphs, is subject to the duty therein prescribed.

We think that the testimony in the case establishes without contradiction that the parabolic mirrors under consideration are cast polished plate glass, silvered and bent, and that they are therefore dutiable, with their frames, if any there were, as provided by paragraphs 103 and 104 of the tariff act of 1909.

The decision of the Board of General Appraisers is *reversed*.