MICHELIN TIRE CO. *v.* UNITED STATES (No. 1473).[1]

BAND OR BELTING LEATHER CUT INTO FORMS.

The protest correctly stated the character of the goods as band or belting leather, and showed error by the collector in the application of a certain clause in paragraph 451, tariff act of 1909. The collector had before him all the facts calling for reliquidation, for increasing the rate of duty because the goods had been cut into forms, and he was not in any respect misled. The protest was sufficient.—Bowling Green Storage & Van Co. *v.* United States (3 Ct. Cust. Appls., 309; T. D. 32588) distinguished.

United States Court of Customs Appeals, May 26, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7603 (T. D. 34807).

[Reversed.]

Coudert Bros. (*Edward D. Bolton* of counsel) for appellees.
Bert Hanson, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
The sole question in this case is as to the sufficiency of the protest. The merchandise in question is conceded to be dutiable under

[1] Reported in T. D. 35507 (28 Treas. Dec., 1016).

paragraph 451 of the tariff act of 1909, and it is also conceded that it falls within the description of that paragraph as band or belting leather, dutiable at 5 per cent ad valorem, and that it is processed by being cut into forms suitable for conversion into manufactured articles and thereby subject to an additional duty of 10 per cent. The paragraph in question reads as follows:

451. *Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem;* dressed upper and all other leather, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; chamois skin, twenty per centum ad valorem; skins for morocco, tanned but unfinished, five per centum ad valorem; patent, japanned, varnished, or enameled leather weighing not over ten pounds per dozen hides or skins, twenty-seven cents per pound and fifteen per centum ad valorem; if weighing over ten pounds and not over twenty-five pounds per dozen, twenty-seven cents per pound and eight per centum ad valorem; if weighing over twenty-five pounds per dozen, twenty cents per pound and ten per centum ad valorem; pianoforte leather and pianoforte-action leather, and glove leather, twenty per centum ad valorem; leather shoe laces, finished or unfinished, fifty cents per gross pairs and ten per centum ad valorem; boots and shoes made of leather, fifteen per centum ad valorem: *Provided,* That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

The collector assessed the merchandise as consisting of skins, dressed and finished, cut into forms for use as belts, at 25 per cent under paragraph 451. The importer protested this assessment, stating:

We claim that the merchandise * * * upon which duty was imposed at the rate of 25 per cent should have been admitted as band or belting leather, and a duty of only five per cent ad valorem imposed in accordance with paragraph 451 of the tariff act of 1909 and more particularly in accordance with that part of the section which reads: "Band, bend or belting leather, rough leather, and sole leather, five per centum ad valorem."

It is conceded that the goods imported were not dutiable as skins dressed and finished, at 15 per cent, plus the cumulative duty, but were in fact dutiable as claimed by the importer at 5 per cent as band, bend, or belting leather, subject, however, to a cumulative duty under the proviso of the same paragraph which reads "that leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut." There can be no doubt, therefore, that the protest pointed out *an error* in the assessment as made, and that it correctly stated the character of the goods imported as band or belting leather. The real error in the assessment was in classifying the goods as skins, dressed and finished, rather than as band or belting leather.

But it is said that because the rate of 5 per cent is that fixed for band or belting leather, which has not been subjected to a further process, this vitiates the protest, although it must have served the purpose 'of drawing the attention of the collector to the particular fault in the assessment of which he was guilty. I think this is too technical a construction to be placed upon the provision of section 14 of the administrative act, which requires the importer to set out in the protest distinctly and specifically the reasons for his objections to the assessment. True, it was claimed that the leather was dutiable at 5 per cent (which was indeed the primary duty), but an inspection of the merchandise would show that 10 per cent should be added to this 5 per cent on account of the advance in condition. There is nothing to impugn the importers' good faith. Ought they to be punished for the technical failure to hit upon the proper per cent so long as the quality of goods distinguishing them from all others as to the primary rate was given, and so long as the only failure was in judging properly as to a matter equally and indeed finally (subject to appeal) within the province of the collector to adjudge? For in determining the sufficiency of the protest the advanced condition of these goods, as shown by the appraiser's report, and to be disclosed also by an examination of the merchandise, was within the knowledge of the collector. Under this protest the collector was in no way misled. He might and should have granted the relief which, while within the limit of that claimed, fell short of the importers' claim. If the protest was sufficient to direct his attention, therefore, to the error which the collector had committed, and to point out the character of the goods, which, read in connection with the report of the appraiser, was sufficient to furnish a guide for a reliquidation, I am unable to see in what way the overconfidence of the importers as to the amount of reduction which was due them has worked any injury to Government or has misled the collector in any way. The record does not disclose that he was in any way misled, as the return would seem to indicate the insistence upon the assessment as made, although the error in it had been clearly pointed out.

In the case of Carter *v.* United States (1 Ct. Cust. Appls., 64; T. D. 31033) this court first reviewed the decisions upon this subject, and in that case we said:

If the purpose of this notice is to apprise the collector of what the claim of the importer is, and if technical nicety is not to be insisted upon, we think that where the importer protests against the rate assessed and at the same time points out provisions under which he claims the articles to be dutiable with sufficient clearness, so that the collector may, by mere computation or examination of the goods, determine their classification, he has complied with the statute in all essential respects.

And in speaking particularly as to the facts in that case it was said:

In the present case it is true a number of paragraphs are named in the protest, but all relate to the same subject, to wit, cotton cloth. The means of ascertaining the

rate of duty are in the hands of the collector. He has but to examine the goods and make the count of threads, which, we understand, is customary in any case in order to determine the rate of duty. The real matter of difference between the importer and the collector was that the latter assumed the goods to be etamines, whereas the importer claimed that they were dutiable as cotton cloths at the rate to be determined by the collector himself. To require that the importer should, at his peril, state the number of threads to the square inch when his statement would not be in any way controlling upon the collector would be not to give a liberal or reasonable construction to the statute, but to set a trap for the unwary, and perhaps lead to nullifying his protest because of overparticularity.

The cases were also reviewed in the opinion, commencing with Converse v. Burgess (18 How., 413), which noted the fact that the statute as originally enacted was designed for practical use by men engaged in active commercial pursuits. The court there said:

We are not, therefore, disposed to exact any nice precision nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint and his design to make it the foundation of a claim against the Government.

And the case of Arthur v. Morgan (112 U. S., 495) was also referred to, in which case it was said:

A protest * * * is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the Government the practical advantage which the statute was designed to secure.

It seems to me that in this case these purposes of the protest were met. The real controversy between the Government and the importer was that of whether the importation consisted of skins, dressed and finished, or of band or belting leather. This question was fairly presented. It was then within the power of the collector to reliquidate, while insisting upon the increased rate of duty upon the claim that the goods were cut into forms, and such, it seems to me, was his duty.

The case in re protest of J. H. Thorpe & Co., G. A. 5613 (T. D. 25108), would seem to be on all fours with the case here considered. The opinion is by De Vries, General Appraiser. The goods were assessed for duty under the tariff act of 1897 at 50 per cent ad valorem under paragraph 391, which reads:

391. * * * All Jacquard figured goods in the piece, made on looms, of which silk is the component material of chief value, dyed in the yarn, and containing two or more colors in the filling, fifty per centum ad valorem.

It was claimed by the protest to be dutiable in the following language:

We claim that the said cotton goods are properly dutiable at no higher than 40 per cent as countable cottons under and by virtue of the provisions of paragraph 307 or 308 of the act of July 24, 1897.

The collector in his return recited:

It appears that the goods in question * * * are properly dutiable at 40 per cent ad valorem under the provisions of paragraph 307, act of July 24, 1897, *and, in addition thereto, at 2 cents per square yard under the provisions of paragraph 313, act of July 24, 1897.*

And concluded:

As the protestants, however, have failed to point out the proper paragraphs of the law under which duty should be assessed, the assessment of duty as made is affirmed.

Paragraph 307 therefore fixed the primary rate upon the goods imported. Paragraph 313 provided that—

Cotton cloth in which other than the ordinary warp and filling threads have been introduced in the process of weaving to form a figure, whether known as lappets or otherwise, and whether unbleached, bleached, dyed, colored, stained, painted, or printed, shall pay, in addition to the duty herein provided for other cotton cloth of the same description, or condition, weight, and count of threads to the square inch, * * * two cents per square yard if valued at more than seven cents per square yard.

The board said:

We think the protest is sufficient. The one uniform rule established by all the decisions upon the sufficiency of protests and which is concurred in by all authorities is that the protest must be sufficient in language to bring to the mind of the collector the proper provision or provisions of law under which assessment of duty should be made upon the merchandise covered by the protest. The reason of the rule is for the expedition of business, in that the mind of the collector may be at once directed to the applicable provision or provisions of law. It would seem from the return of the collector in this case that this protest was sufficient to direct his mind to the proper provisions of the law, at least that he had the applicable provision in mind at the time he made his return, for he has recited in his return the correct provisions as those applicable. Moreover, the protest cites the proper rate, 40 per cent ad valorem, and indicates the proper paragraph, paragraph 307, which is the applicable paragraph to this merchandise. Paragraph 313 in terms provides an additional duty to the rates and amounts of duty provided in the countable provisions of the cotton schedule. Whenever, therefore, the mind of the collector is directed to any particular paragraph of the countable schedule, he, being conclusively presumed to know the law, must be held to know that as a part of each of these paragraphs with reference to certain goods covered thereby must also be considered the language of paragraph 313; and, that whenever any one of the countable provisions is invoked by a protest he must know, and is conclusively presumed to know as a matter of law, that the particular paragraph levying duty in a particular case is not all the law upon that subject and is not the entire provision applicable to goods coming under that paragraph, but that in certain cases, which are to be determined by the merchandise before him, there is an additional provision of law applicable which must be held to be a part of the particular or conjoint provisions with that paragraph.

We are of the opinion that with the protest before him claiming the correct rate of duty and citing the paragraph of the law applicable in the first instance, together with the merchandise containing the extra threads provided for in paragraph 313 likewise before him, there was presented to the collector such a citation of law and presentation of fact which, together with the presumptive knowledge of the law deemed ever in his mind, must have indicated with certainty the applicable provisions of law relied upon by the importer.

If this may be said of the modifying provisions of a paragraph to which the collector's attention is directed, contained in another paragraph of the statute, with how much more force it may be said of a similar provision contained in the very paragraph to which his attention is distinctly called by the protest.

The Board of General Appraisers, in the prevailing opinion, relied upon the opinion of this court in Bowling Green Storage & Van Co. v. United States (3 Ct. Cust. Appls., 310; T. D. 32588). That case is clearly distinguishable from the present. The protest there read:

You will please take notice that we protest against your decision as to the rate and amount of duties to be paid on antiquities, etc., * * * and claim as reasons for our objections thereto that the said merchandise is properly classifiable * * * under 717 as works of art and sculptures which have been in existence more than 20 years prior to the date of their importation, the production of professional sculptors in marble, stone, etc.

Paragraph 717 provided for two classes of articles—the one, works of art which had been in existence more than 20 years prior to the date of their importation; the other, works of art and other antiquities which had been produced more than 100 years prior to the date of importation. The question was whether this protest was fair notice to the collector of a purpose to claim that these were works of art more than 100 years old. Obviously it was not. For it, in the plainest terms, related solely to works which had been in existence 20 years prior to the date of importation and directed the attention of the collector to that clause of the paragraph. The mere recitation that they objected to the rate fixed upon antiquities, etc., did not militate against this construction of the paragraph, and this court so held. The case is not an authority for the conclusion reached by the board.

In my opinion the protest in this case is sufficient, and the decision of the board should be *reversed*.

DE VRIES, Judge, concurs.

---

CONCURRING OPINION.

BARBER, Judge, specially concurring, with whom Smith, Judge, joins:

We concur in the conclusion reached in the opinion of Montgomery, Presiding Judge, but prefer to rest it on the following grounds:

Paragraph 451 of the tariff act of 1909 lays a duty of 5 per cent ad valorem on band, bend, and belting leather; a duty of 15 per cent ad valorem on certain designated skins dressed and finished, and an additional duty of 10 per cent ad valorem on leather cut into forms suitable for conversion into manufactured articles. The merchandise here in question was classified by the collector as skins, dressed and finished and cut out into forms. The importation was accordingly

assessed for duty at 25 per cent ad valorem. The importers objected to the classification of the merchandise and the duty assessed thereon and specifically claimed in their protest that the merchandise was band or belting leather and that it was subject to a duty of only 5 per cent ad valorem. Fairly construed we think that this protest must be regarded as claiming that the merchandise was band or belting leather and as denying that it was cut into forms. The issue as made up, therefore, on the assessment of the collector and the protest thereto by the importers involved the determination of three questions of fact—first, was the merchandise skins, dressed and finished; second, if not skins dressed and finished, was it band or belting leather; and, third, was it cut into forms.

That these were the issues raised by the protest was as well known to the collector as it was to the importers, and on those issues the Government and the importers went to trial before the board. The importers established by evidence that the goods were band or belting leather, but failed to establish their claim that the leather was not cut into forms. From that it follows that their protest should have been sustained as to their claim that the merchandise was band or belting leather, and that it should have been overruled as to the claim that the leather was not cut into forms.

---

### DISSENTING OPINION.

MARTIN, Judge: In my opinion the protest of the importers in this case was insufficient and the majority decision of the board was right in overruling it. The merchandise consisted of strips of leather designed to be manufactured into automobile tire treads. It is conceded that they were dutiable under paragraph 451, tariff act of 1909. That paragraph includes various separate classifications of leather and skins and imposes different rates of duty upon them. The first clause of the paragraph imposes a duty of 5 per cent ad valorem upon "band, bend, or belting leather." A subsequent clause in the paragraph imposes a duty of 15 per cent ad valorem upon "other skins." The last clause of the paragraph reads as follows:

*Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

Under the foregoing provisions the collector held that the merchandise was subject to duty at the rate of 15 per cent ad valorem as "other skins," and also to 10 per cent ad valorem as "leather cut into forms suitable for conversion into manufactured articles." The merchandise was accordingly assessed with duty at the rate of 25 per cent ad valorem.

The importers protested against the assessment, claiming that the merchandise "should have been admitted as band or belting leather, and a duty of only 5 per cent ad valorem imposed in accordance with paragraph 451 of the tariff act of 1909, and more particularly in accordance with that part of the section which reads: 'Band, bend, or belting leather,   *   *   *   five per centum ad valorem.'"

It therefore appears that the collector assessed the goods with 25 per cent ad valorem duty as being both "other skins" and leather "cut to form," and that the importers by unmistakable averments in the protest, contested the entire assessment and claimed as a substitute therefor an assessment of only 5 per cent ad valorem under the provision for band, bend, or belting leather.

Upon the record it appears that the goods were rightly subject to duty at 5 per cent ad valorem under the provision for "band, bend, or belting leather," and additionally to 10 per cent ad valorem under the provision for leather "cut to form," that is to say, the merchandise should rightly have been assessed with duty at 15 per cent ad valorem.

It thus appears that neither the collector nor the importers were correct in the claim respecting the proper assessment of the merchandise.

The collector's assessment included two elements, namely, 15 per cent ad valorem as "other skins" and 10 per cent ad valorem as "leather cut to form." The first of these was incorrect; the second was correct.

The importers' protest contested the entire assessment, including both the correct and the incorrect constituents, and claimed assessment at only 5 per cent ad valorem duty as "band, bend, or belting leather."

The importers' protest, therefore, should be overruled.  It is the office of a protest to object to an incorrect assessment and at the same time to state specifically the correct provision or provisions of the tariff act under which the merchandise should be assessed.

The present protest complies with half only of this requirement. It contests the incorrect assessment made by the collector, but it fails to set out correctly the provisions of law under which the assessment rightly should be made.  It simply proposes one incorrect rate of duty as a substitute for another incorrect rate.  In other words, the well-established rule requires that the importers' protest must correctly set out the provisions of the law under which the merchandise should be assessed; otherwise it can not be sustained. The present protest fails to do this.  Its claim is plainly incorrect, and if it were actually sustained as made it would result in assessing the merchandise at a rate of duty quite as erroneous as was the original assessment.

It should be noted also that the claim of the importers for assessment is single and indivisible.  The protest presents but one claim

concerning the correct assessment of the merchandise, and that is that it should be assessed at 5 per cent ad valorem, *and no more.* If this claim be incorrect (and it is now conceded to be so) then the protest should be overruled.

It may be regretted, in such a case, that the importers mistook their remedy, and therefore failed to file a protest such as would entitle them to relief; but this consideration does not justify a departure from the well-defined rule of procedure in such cases, and in the present case there is all the less reason for departing from the rule, since the claim for assessment made by the importers in the protests was unmistakably made for the purpose of resisting the imposition of the 10 per cent cumulative duty upon the merchandise, which duty, however, is now conceded by the importers to be applicable to the merchandise.

I am therefore of the opinion that the decision of the board should be affirmed.