GENERAL ELECTRIC CO. *v.* UNITED STATES (No. 1625).[1]

1. PLEADING—PROTEST, SUFFICIENCY OF.
    A protest is not rendered insufficient by claiming at the wrong rate under paragraph 103, tariff act of 1909, which taxes mirrors of different sizes at different rates. The record shows the sizes of the mirrors and, the report of the official gauger being presumed to do so, there was sufficient before the collector for proper liquidation.
2. METAL FRAMES OF PARABOLIC MIRRORS, HOW DUTIABLE.
    Metal frames in which parabolic mirrors are set are dutiable as metal articles or wares not specially provided for under paragraph 199, tariff act of 1909.

United States Court of Customs Appeals, May 23, 1916.

APPEAL from Board of United States General Appraisers, Abstract 35081 (T. D. 34279) and Abstract 38196.

[Modified.—The opinion is on application for rehearing, the decision having been rendered March 28, 1916, and not published.]

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis* (*R. H. Hillis* and *Edward P. Sharretts* on the brief) for appellant.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

[Oral argument Feb. 15, 1916, by Mr. Sharretts and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This case was decided by this court March 28, 1916, and upon petition by the Government reargument was ordered. The court

---

1 Reported in T. D. 36464 (30 Treas. Dec., 964).

adheres to the conclusion reached in the former decision, and adopts this as the opinion in the case.

The merchandise is parabolic mirrors.     It is identical with the merchandise the subject of decision by this court in General Electric Co. v. United States (5 Ct. Cust. Appls., 528; T. D. 35176).   The court therein held that such merchandise was properly dutiable under the provisions of paragraphs 103 and 104 of the tariff act of 1909.   Upon the hearing before the Board of General Appraisers the board overruled these protests upon the ground that there was no proof sustaining the precise allegations made.   The record in General Electric Co. v. United States (5 Ct. Cust. Appls., 528; T. D. 35176) was incorporated as a part of the record in this case.   There is in this case all the proofs in that and more.   The insufficiency of the protest in that case was urged upon the argument but not sustained by the court.   The protests, which are alike in material particulars and are herein conceded to be sufficient, read as follows:

We hereby protest against the rate and amount of duty charged by you on certain reflectors assessed by you at 60 per cent.

The ground of our objection is that the said reflectors are properly dutiable at 11 cents per square foot and 5 per cent ad valorem under paragraphs 103 and 104, and if the said reflectors have metal frames attached to them the said frames are dutiable at the rate of 45 per cent ad valorem under paragraph 199 by virtue of the proviso to paragraph 103.   We claim further that if the said reflectors are not dutiable as above claimed that they are properly dutiable at 45 per cent ad valorem under paragraph 109 or at 10 per cent or 20 per cent under paragraph 480 of the tariff act of 1909.

Paragraphs 103 and 104 of the tariff act of 1909 are as follows:

103. Cast polished plate glass, silvered, cylinder and crown glass, silvered, and looking-glass plates, exceeding in size one hundred and forty-four square inches and not exceeding three hundred and eighty-four inches, eleven cents per square foot; above that, and not exceeding seven hundred and twenty square inches, thirteen cents per square foot; all above that, twenty-five cents per square foot: *Provided*, That no looking-glass plates or plate glass, silvered, when framed, shall pay a less rate of duty than that imposed upon similar glass of like description not framed, but shall pay in addition thereto upon such frames the rate of duty applicable thereto when imported separate.

104. Cast polished plate glass, silvered or unsilvered, and cylinder, crown, or common window glass, silvered or unsilvered, polished or unpolished, when bent, ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, or decorated, shall be subject to a duty of 5 per centum ad valorem in addition to the rates otherwise chargeable thereon.

In overruling these protests the board stated:

It will be observed that the claim under paragraph 103 in all the protests is that the mirrors are dutiable at 11 cents per square foot, and that this rate only applies to such looking-glass plates as exceed in size 144 square inches and do not exceed 384 square inches, higher rates being provided for such as exceed those dimensions.   We have no proof as to any of these mirrors that they exceed 144 square inches and are under 384 square inches in size; on the contrary, the testimony speaks of 24, 30, 36, 40, 60, and 62 inch mirrors, presumably meaning that they are of those diameters.

A calculation will show that the smallest of these mirrors will very much exceed 384 square inches in size.

While we are clearly of opinion, in view of the General Electric case, *supra,* that this merchandise is properly dutiable under paragraphs 103 and 104, yet we can not hold the merchandise dutiable at the rate claimed in the protest unless we have proof that it is within the size covered by that rate.

Whether the issue be stated as one concerning the sufficiency of proof or as one concerning the insufficiency of a protest the considerations are the same. In the last analysis the question presented for decision to this court is, does proof of an importation of parabolic mirrors more than 384 square inches in size make a case within the provisions of a protest which in language is confined to the declared rate for and description of mirrors under 384 square inches in size? There is proof in the record of parabolic mirrors which fall for dutiable purposes under the provisions of paragraphs 103 and 104 of the tariff act of 1909. Indeed, if there were sufficient facts before the board to determine that the sizes of these mirrors were not such as were under 384 square inches it is difficult to understand how there was not sufficient evidence before the board to determine their exact size. And, if the protest as framed is sufficient to cover parabolic mirrors of any size, it follows *ex necessitate* that, the sizes of those imported being shown, there was sufficient proof in the record to support the allegations of the protest. But regardless of any deductions from the reasoning of the board the record itself concludes the fact that there is herein uncontradicted testimony as to the existence in this importation of parabolic mirrors and their exact sizes. The following are excerpts therefrom (Record, pp. 29 and 30):

Q. (By Mr. HILLIS.) Are you familiar with the invoices covering all these protests, covered by all these protests, with respect to which you are testifying this morning?—A. I have seen them; yes.

Q. Have you personally gone over them?—A. Yes, sir.

Q. How recently?—A. Within a week.

\*        \*        \*        \*        \*        \*        \*

Q. No; the number of protests. Do you know how many protests you have filed?—A. Thirty-seven, I think.

Q. Have you seen the invoices covered by these protests?—A. I have.

Q. Are you personally familiar with the merchandise which was covered by those protests?—A. I am, sir.

Q. With respect to the mirrors that are imported in frames, have you made any examination of the invoices with a view of determining just which mirrors were imported in frames?—A. I have.

Q. Have you any memorandum with you?—A. I have. (Witness produces memorandum.)

Q. Was this memorandum made by yourself?—A. It was.

Q. From what source was the information derived?—A. From the invoices.

Q. Do you know of your own personal knowledge whether this list represents each and every mirror imported in a frame?—A. Yes.

Q. And the values of the mirrors?—A. Yes.

Q. I ask you to look at the first item on that list. Will you please read it?—A. Entry 330, on the vessel *Blucher*, 1/60 in frames.

Q. The next one.

\*          \*          \*          \*          \*          \*          \*

Mr. LAWRENCE. I am objecting to him reading from something he has not offered. If the paper contains data covering these protests, I have no objection to it being received.

General Appraiser SULLIVAN. We do not want the paper. If that refreshes his memory, let him testify from it.

Q. Please read the second item.—A. Entry 621, steamer *Batavia*, 4/60-inch mirrors in frames. Entry 662, steamer *Pennsylvania*, 6/60-inch mirrors in frames. Entry 763, steamer *Bulgaria*, 6/60-inch frames.

General Appraiser SULLIVAN. Is that all?

The WITNESS. That is a complete list; sir.

Q. How many 60-inch mirrors are on that slip?—A. Seventeen.

Q. Those are imported in frames?—A. They were.

Q. Do you know the value of the frames?—A. 640 marks each. I will state there that I gave the diameter in inches.

Does a protest of the confined language of this one, which counts upon paragraphs 103 and 104 of the tariff act of 1909, cover this merchandise, and is the proof of such merchandise in the case proof within the terms of such a protest? We think the question is *stare decisis* in this court. In Carter *v.* United States (1 Ct. Cust. Appls., 64, 69; T. D. 31033), opinion by the presiding judge, it is said:

If the purpose of this notice is to apprize the collector of what the claim of the importer is, and if technical nicety is not to be insisted upon, we think that where the importer protests against the rate assessed and at the same time points out provisions under which he claims the article to be dutiable with sufficient clearness so that the collector may *by mere computation or examination of the goods* determine their classification, he has complied with the statute in all essential respects.

In United States *v.* Stirn (5 Ct. Cust. Appls., 140; T. D. 34191) the point was more precisely similar. That case concerned a protest under paragraph 397 of the tariff act of 1909 which declared different rates of duty upon silk yarns of different numbers. It alleged that the yarns in question were 250/2 ply. No testimony was introduced before the board on this point. Upon the appraiser's reexamination of the merchandise it was disclosed that the size of the yarns was 261 and 269, and there were no yarns in the case 250/2, as literally claimed in the protest.

This court said:

If no size number had been mentioned it could not be urged that the collector was thereby misled, and we do not think the fact that an erroneous one was claimed has that effect. The protest as a whole shows that the importers had the correct provision of law in mind when it was filed, and by it the collector's attention was thereto directed.

\*          \*          \*          \*          \*          \*          \*

The importers here have sustained their claim that the yarns were dutiable according to their size number in a dyed condition, and the protest is sufficient to entitle them to reliquidation accordingly.

See also Michelin Tire Co. *v.* United States (6 Ct. Cust. Appls., 283; T. D. 35507).

We therefore are of the opinion and hold that there is proof in this record of an importation of parabolic mirrors and of the sizes thereof; that said mirrors are dutiable under the provisions of paragraphs 103 and 104 of the tariff act of 1909; and that, therefore, the decision of the Board of General Appraisers should be and is *reversed.* The board's decision as to frames is *affirmed.*