## UNITED STATES *v.* MALONE (No. 2328).[1]

SUFFICIENCY OF PROTEST—WOOL ON SKINS.

A protest is sufficient if it fairly shows that the objection made by the protestant at the trial was in his mind when he protested and was, by the protest, brought to the attention of the collector. Wool on the skin was segregated by the collector, the wool being assessed under paragraph 18 of the emergency tariff act of 1921, and the skins admitted free, apparently under paragraph 603, tariff act of 1913, as undressed sheepskins. The importer protested, claiming that the entire importation was entitled to free entry as undressed sheepskins under paragraph 603, tariff act of 1913. Without deciding whether or not the merchandise is classifiable as claimed, the protest was sufficient to sustain a classification of it under paragraph 650, tariff act of 1913, or of the wool as wool on the skin under paragraph 650, tariff act of 1913, and the skins as undressed skins under paragraph 603 of the same act.

United States Court of Customs Appeals, April 21, 1924.

APPEAL from Board of United States General Appraisers, Abstract 46297.

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.
*John J. Mulvaney* for appellee.

[Oral argument February 15, 1924, by Mr. Lawrence and Mr. Mulvaney.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

The wool on certain imported sheepskins was classified and assessed for duty under paragraph 18 of the emergency tariff act of 1921 as clothing wool. In order to determine the quantity of such wool the customs officials sheared skins of average weight and applied the percentage of wool found thereon to all the skins of the shipment.

The skins themselves were allowed free entry by the collector apparently under paragraph 603 of the tariff act of 1913. Importer protested the classification and assessment of the wool and as ground therefor claimed, that the emergency tariff act was inapplicable and that the entire importation was entitled to free entry as undressed sheepskins under said paragraph 603. This paragraph provides for skins of hares, rabbits, dogs, goats and sheep, undressed.

The Board of General Appraisers sustained the protest.

The Government concedes, in view of our decision in United States *v.* Davies Co. (11 Ct. Cust. Appls. 392; T. D. 39317), that

---

[1] T. D. 40167.

the wool was not dutiable but was entitled to free entry and also admits the skins were likewise free. It insists however, that the importer is not entitled to relief because he failed to invoke paragraph 650 of the act of 1913 which specifically grants free entry to all wool and hair on the skins of sheep and certain other animals.

It is stipulated that the merchandise here is like the sheepskins involved in the Davies case and that the record of that case may be regarded as incorporated into the record of this.

The question of whether a protest is sufficient has been the subject of much consideration by other courts, and many such cases have been considered here. Probably a leading case on that subject is United States *v*. Salambier (170 U. S. 621), the opinion in which contains a careful consideration of the functions of a protest, and an examination of decisions upon the question of its sufficiency. The particular protest under review there was claimed to be insufficient on the ground that although it averred that the collector's assessment was illegal and claimed that the merchandise was dutiable at 2 cents per pound instead of 50 per cent ad valorem as the collector had assessed it, it did not point out the particular paragraph upon which the claimed applicable rate was founded. It appeared that there were two paragraphs naming the imported merchandise, each of which imposed the duty claimed by the importer to be applicable.

In substance the Supreme Court held that a strict rule of construction was not applicable to protests; nor was technical precision therein required; that the object of a protest was to apprise the collector of the nature of the objection made before it was too late to remove it, thereby exposing the Government to the risk of litigation; that a protest was sufficient if it fairly showed that the objection made by him at the trial was in the mind of the importer when he protested and was by the protest brought to the attention of the collector "so as to secure to the Government the practical advantage which the statute was designed to secure."

In this court similar conclusions have been reached.—Carter *v*. United States (1 Ct. Cust. Appls. 64; T. D. 31033); Bliven *v*. United States (1 Ct. Cust. Appls. 205; T. D. 31239); United States *v*. Sheldon & Co. (5 Ct. Cust. Appls. 427; T. D. 34946); United States *v*. Troy Laundry Machinery Co. (5 Ct. Cust. Appls. 430; T. D. 34947); Michelin Tire Co. *v*. United States (6 Ct. Cust. Appls. 283; T. D. 35507).

It is obvious that the importer in this case by claiming that the emergency tariff act was not applicable and that the merchandise was entitled to free entry under paragraph 603 explicitly called the attention of the collector to the fact that he had erred in his classification and assessment. As was said in the Salambier case, "It does

not appear that the collector deemed the protest insufficient in form or unintelligible." He evidently relied, not upon any insufficiency in the protest but upon the proposition that his assessment was lawfully made. The protest also distinctly called his attention to the fact that free entry was claimed and under the rule of the Salambier case it would seem that if specific reference had not been made to paragraph 603 there would be no question as to its sufficiency. See United States v. Hunter (124 Fed. 1003) and Weil v. United States (124 Fed. 1006).

In the latter of these cases the importer protested an assessment of merchandise as dutiable, contending that it was free under two different paragraphs of the free list.

It was found that the merchandise, calfskins, was not free under either of the paragraphs relied on in the protest but was entitled to that privilege under still another paragraph not invoked by the importer. The protest, however, was adjudged sufficient on the authority of the Salambier case.

The case of United States v. Danker & Marston (2 Ct. Cust. Appls. 462; T. D. 32208) cited by the Government is perhaps the closest parallel of any decided in this court. There the collector had assessed certain merchandise as a nonenumerated manufactured article. In their protest importers had alleged that it was entitled to free entry under a paragraph providing for various drugs. It appeared upon trial, however, that the merchandise was not within the drug paragraph but was within another paragraph providing for articles in a crude state used for dyeing or tanning. Under such circumstances we held the protest was insufficient. It is quite evident from the opinion in that case that the importers did not have in mind at the time of making their protest, that the merchandise was entitled to free entry as articles used in dyeing or tanning and the protest had a tendency to lead the mind of the collector away from the applicable paragraph.

The Government also cites, apparently with some confidence, Bush & Co. v. United States (11 Ct. Cust. Appls. 246; T. D. 39076), but we do not regard that as controlling. The merchandise there was assessed under paragraph 5 of the act of 1913 as a chemical compound. The importers contended for free entry as a grease, etc., not chemically compounded, such as is commonly used in soap making, etc., under paragraph 498. The board held that the merchandise was entitled to free entry under paragraph 561 as soya-bean oil but refused to sustain the protest because that paragraph was not invoked. We affirmed the judgment of the board but found that the oil was chemically compounded which excluded it from both paragraphs 498 and 561.

In the case at bar we do not think it can be said that the importer did not have in mind when he made his protest the contention that he made before the board or that the collector has in anywise been misled by the protest itself. The merchandise is sheepskins undressed, and the wool is on them. We are by no means clear that in common parlance the merchandise is not within the express provisions of paragraph 603, although we reserve decision on that point. If the entire importation was not within that provision, the skins were, and the wool which was on them was within paragraph 650. The collector had assumed without right to segregate the wool from the skins and assess it for duty. When his action was challenged by the importer's protest, it became his duty to reexamine the matter and it would then be quite apparent to him that the wool which was a part of the physical entirety before him, if not within paragraph 603 was clearly within paragraph 650, of which he was presumed to have knowledge. His attention was not led away from the true tariff status of the merchandise as in the Danker case, and he was not excused, by having segregated the wool from the skins, from considering whether that segregated wool was or was not dutiable.

In addition to this, as suggested by importer's counsel, the protest squarely raised the issue as to the applicability of the emergency act and in view of the rule that technical precision is not required in protests and that they are not to be strictly construed but are to be given a liberal construction, it might well be held in view of the circumstances of this case that the reference to paragraph 603 was surplusage. See Shaw *v.* United States (122 Fed. 443); In re Houdlette (48 Fed. 545).

We think the judgment of the Board of General Appraisers ought to be and it is *affirmed*.