BEFORE THE SECOND DIVISION

APRIL 20, 1961

No. 65492.—John S. Connor v. United States, protest 59/23711 (Baltimore).—

RAO, Judge : This is a motion to dismiss the above-entitled action on the ground that the protest purporting to initiate it is not legally sufficient and for the further reason that it was not filed by an authorized party within the provisions of section 514 of the Tariff Act of 1930. Said section reads as follows :

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

Upon application of counsel for the plaintiff, filed in opposition to the motion, an order was entered setting the matter down for hearing upon the question of the authority of the person signing the protest to file it.

From the evidence adduced at the hearing, it appears that, on or about July 23, 1956, John S. Connor, a customhouse broker, acting in behalf of Bulkley, Dunton & Company, filed an entry for an importation of printing paper in which it was recited that said merchandise was newsprint paper entitled to free entry, by virtue of the provision in paragraph 1772 of the Tariff Act of 1930, for standard newsprint paper.

On February 18, 1957, the entry was liquidated as dutiable at the rate of 0.19 cent per pound and 4¾ per centum ad valorem, within the provisions of paragraph 1401 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for uncoated printing paper, not specially provided for. Payment of the duties determined to be due was made on April 5, 1957.

Prior to the latter date, and on March 29, 1957, the collector of customs at Baltimore, the port of entry, received the following communication which, it is now claimed, is the plaintiff's protest:

March 28, 1957.

United States Customs Collector
Baltimore
Maryland

Re: Shipment of Newsprint from
PAPIERFABRIK ALBBRUCK
*via* SS "HAVHOK" C/o
JOHN S. CONNOR
Bill No. M–102633

Sirs:

This is an application to obtain a refund of the sum of $3,526.75 paid by my client. Mrs. Eric Brauer, the United States representative of Papierfabrik Albbruck, thru John S. Connor, customs broker, of Baltimore, Md.

The newsprint paper which had been imported did not conform to the sample and/or specifications, and was rejected and had to be returned to the shipper in Germany. For this reason request is hereby made for refund of the duty, which appears to be indicated in this matter.

Very truly yours,
Alfred Prager

The record further shows that the Mrs. Eric Brauer, referred to in said communication, was the person in whose behalf payment of the duties assessed against this importation was made, and there has been introduced into evidence a power of attorney, executed by Walter V. Connor, trading as John S. Connor, in favor of Alfred Prager and Tompkins & Tompkins, the firm of attorneys who now represent the plaintiff, to file such protests as are permitted by section 514 of the Tariff Act of 1930, in connection with the entry of the instant merchandise. The power of attorney is dated November 27, 1957.

Under these circumstances, we entertain little doubt that Alfred Prager was a person authorized to file a protest by the provisions of section 514, *supra*. He is shown to have been both the agent of the person paying the charge complained of, as well as the agent of the importer of record, whose actions in the latter's behalf have been duly ratified by the power of attorney. See *United Bulb Co. v. United States*, 6 Cust. Ct. 78, C.D. 431.

A much more perplexing question is posed, however, by the attack upon the legal sufficiency of the document which he has filed. He therein seeks a refund of the duties paid (actually not yet deposited), for the reason that the paper was returned to the shipper because it did not conform to the sample and/or specifications. The document makes no reference to any provision of the Tariff Act of 1930 as authority for the refund.

It appears, however, that section 313(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, authorizes a refund of duties assessed against merchandise not conforming to sample or specifications under the following conditions:

(c) Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary

authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

So far as research reveals, this is the only provision of law which could apply to the situation outlined in the letter which the collector received on March 29, 1957.

The law is well settled that a protest need not be technically precise, but should be liberally construed in favor of its legality where the reasons for the objection to the collector's action have been distinctly specified and are sufficient to advise the collector of what was in the mind of the protestant at the time of filing, to the end that the collector may have an opportunity, if he so desires, of correcting his decision. *Converse* v. *Burgess*, 18 How. 413; *Arthur* v. *Morgan*, 112 U.S. 495; *United States* v. *Malone*, 12 Ct. Cust. Appls. 178, T.D. 40167; *Kilburn Mill* v. *United States*, 26 C.C.P.A. (Customs) 54, T.D. 49598.

An omission to name a specific provision claimed to be applicable is not necessarily fatal to the validity of a protest where the collector can readily ascertain from the reasons assigned which provision of law is intended to be controlling. *United States* v. *Salambier*, 170 U.S. 621.

The general principles involved in determining the sufficiency of protests were reviewed in the case of *American Mail Line, Ltd.* v. *United States*, 34 C.C.P.A. (Customs) 1, 6, C.A.D. 335, whereof the court stated:

A long line of decisions of this court holds that it was the purpose of Congress, in enacting the protest provision, to simplify the procedure relating to the collection of customs duties; that no specialized legalistic knowledge was to be required in filing a protest, and that it would be sufficient if it distinctly and specifically set out the reasons for the objections to the collector's action so that the collector would know what was in the mind of the protestant and, if proper, could take such action as was necessary to make corrections. The protestant was required not only to point out that his merchandise was not dutiable under the provision under which it was assessed with duty, but to also point out where in the tariff act it was dutiable, if anywhere.

Notwithstanding the very lenient approach dictated by the foregoing authorities, it is questionable whether the letter here under consideration constitutes a sufficient protest.

The authority to file, in the first instance, stems from the provisions of section 514, *supra*, which makes protestable—

(1) all decisions of the collector as to the rate and amount of duties chargeable;

(2) all decisions of the collector as to exactions;

(3) the collector's decisions excluding any merchandise from entry or delivery;

(4) the collector's refusal to pay any claim for drawback;

(5) the collector's refusal to reliquidate for clerical error.

If it is evident from the facts recited in plaintiff's letter that he is claiming a refund of duties, by virtue of the provisions of section 313(c), *supra*, it is equally evident that his right to protest derives from that portion of section 514, *supra*, relating to the collector's refusal to pay a drawback claim. As to this category of protestable decisions, the statute specifically provides that the collector's refusal to pay any claim for drawback shall be final and conclusive, unless the person *"filing such claim for drawback * * * shall, within sixty days after, but not before such * * * refusal * * * file a protest in writing * * *."* [Italics supplied.]

So far as is ascertainable from the facts presently before the court, the only claim for drawback which has ever been made in this case is the very document which plaintiff seeks to have construed as the protest against the collector's

refusal to pay such claim. It seems fairly obvious that a single writing can not be at the same time both a claim for drawback and an objection to a refusal to pay a claim for drawback.

There is neither suggestion, nor allegation, in the purported protest that the collector has exercised his statutory function of acting upon a request for a refund of duties predicated upon the exportation of imported merchandise failing to conform to sample or specifications. Until he does, and refuses to accede to the request, a protest does not lie. Giving to the instant letter every reasonable implication, we see in it no more than a demand for a refund of duty, which may well serve the role of a claim for drawback, but is ill-fitted to the character of a protest against a refusal to accede to that claim.

Moreover, by the terms of section 313(c), *supra*, the right to refund of duties does not accrue, unless the duties have been paid. Yet, it is here clearly shown by the official papers that at the time the letter requesting refund was sent to the collector no deposit of duties had been made. Hence, in any event, the application was premature.

The court is loath to deny a trial to a plaintiff having a meritorious cause of action, but the right to protest is circumscribed by statutory limitations which must be observed. Under the circumstances we are here confronted with, we are constrained to hold that the letter in question is not a proper protest. The motion of the defendant to dismiss the protest for failure to state a cause of action is granted, and the protest is dismissed.

Judgment shall issue in accordance with this memorandum.