AMERICAN THERMO-WARE CO. *et al. v.* UNITED STATES (No. 1532).[1]

OVAL-SHAPED GLASSES—PARTS OF GOGGLES.

> The merchandise here is composed of window glass, but it is cut to form and shape and is adapted and designed for use alone as parts in the making of goggles, so removing it from the classification and assessment as made. Such of these glasses as are not colored are held as dutiable under paragraph 109, tariff act of 1909; and while those colored would seem dutiable under paragraph 98, no claim having been made thereunder, the judgment as to these is affirmed.

[1] Reported in T. D. 35465 (28 Treas. Dec., 915).

## United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7659 (T. D. 35046). [Modified.]

*Comstock & Washburn* (*Geo. J. Puckhafer* on the brief) for appellants.

*Bert Hanson*, Assistant Attorney General (*Leland N. Wood*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

In United States *v.* American Thermo-Ware Co. (2 Ct. Cust. Appls., 9; T. D. 31571) certain oval-shaped glasses suitable for the manufacture of automobile goggles had been classified as ground and polished coquille glasses and assessed for duty under paragraph 109 of the act of 1897, which made specific provision therefor. The importers protested upon the ground that the merchandise was not such glasses, but was common window glass, bent, and as such dutiable under paragraphs 101 and 107 of the act which specifically provided therefor. The Board of General Appraisers sustained the protest.

Upon the argument of the case in this court the Government, among other things, insisted that the articles involved were dutiable under paragraph 108 of the act, which provided for "spectacles, eyeglasses and goggles, and frames for the same, or parts thereof, finished or unfinished." This claim was denied and the judgment of the board was affirmed.

Speaking for the court, Smith, Judge, said with reference to the merchandise in the case, "the evidence submitted on the hearing shows without contradiction and the board finds that none of the glasses are ground or polished." With reference to the Government's claim for classification under paragraph 108, it was said:

In our opinion, the contention can not be successfully maintained. The glasses imported are not mounted and therefore can not be considered as spectacles, eyeglasses, or goggles, which terms necessarily carry with them the idea of suitably prepared glass or pebble or similar material so fitted to frames that it can be worn as an aid or protection to the eyes. True, the goods imported are admittedly parts of goggles, but then the question arises as to whether paragraph 108 really provides or was intended to provide for parts of the completed article. We think not. The language "or parts thereof" in the paragraph just mentioned does not refer to spectacles, eyeglasses, or goggles, but to the "frames for the same." Had the phrase "or parts thereof" been intended to relate back to all that preceded it, the conjunction "and" would not have been repeated and that part of the paragraph would have been made to read as follows: "Spectacles, eyeglasses, goggles, and frames for the same or parts thereof." Indeed, if it had been intended to impose a duty on spectacles, eyeglasses, goggles, *and parts thereof* all reference to the frames might well have been omitted, inasmuch as frames are essential parts of the completed articles.

Then followed a discussion of certain matters which tended to confirm the above conclusion.

In United States v. American Thermo-Ware Co. (4 Ct. Cust. Appls., 21; T. D. 33218) certain disks or pieces of glass, bent, used in the manufacture of "auto goggles," were before us for consideration. These had been classified as coquille glasses with ground edges and assessed accordingly under paragraph 106 of the tariff act of 1909, the provisions of which were not different from those of paragraph 109 of the act of 1897, so far as affects any issue here.  The protest claimed dutiability under paragraphs 99 and 104 of the same act as window glass, bent, provision for which was made in said paragraphs, as in the corresponding paragraphs in the act of 1897, under review in the earlier case.  The protest was sustained and appeal brought by the Government to this court.

The Assistant Attorney General, upon the argument here, conceded that the assessment by the collector could not be sustained, but insisted that the importations were dutiable as manufactures of glass under paragraph 109, which provided as follows:

109. Stained or painted glass windows, or parts thereof, and all mirrors, not exceeding in size one hundred and forty-four square inches, with 'or without frames or cases, and all glass or manufactures of glass or paste or of which glass or paste is the component material of chief value, not specially provided for in this section, forty-five per centum ad valorem.

No samples of the merchandise were retained by the collector in the case and no testimony was introduced.  The merchandise had been originally returned by the appraiser as "coquille glasses, ground edges," and subsequently reported by him as similar to those before this court in the earlier case.  The Government admitted such similarity, and claimed that the merchandise had been so far advanced by previous manufacture that it had acquired a name, character, and use different from common window glass, and so had become a manufacture of glass, and dutiable under paragraph 109.  In the opinion of this court, also by Smith, Judge, certain of the testimony in the prior case was reviewed for the purpose of determining the correctness of this claim.  It was thereupon said of the merchandise:

That testimony, standing by itself, leaves the decided impression that the glasses are not always used for goggles and that they have to be completed.  When that testimony is considered in conjunction with the further declaration of Wolfstein that the glasses were not ground or polished, and with the statement under oath of the witness Apffel that the unpolished and unground glasses presented objects to the eye in a distorted shape, it becomes very evident, indeed, that the merchandise has not taken on the character of a new article, completed, finished, and ready for use. Certainly pieces of glass which would present to the eye a distorted landscape and which would tend to increase rather than diminish the visual vagaries of the average chauffeur can hardly be considered as finished and completed constituent parts of automobile goggles.

But apart from all that, there was in the case referred to uncontradicted evidence to the effect that the glasses might be and were used for other purposes than that of making goggles.  From this it would seem that the merchandise has not been so manipulated or processed as to remove it from the class of manufactures specially

provided for as window glass, bent, much less to put it in the category of manufactures of glass not specially provided for. From the testimony in T. D. 30266 we conclude that window glass, bent, such as that imported, may be used for lanterns, carriage lamps, and cameras, and possibly for many other purposes. These varied uses make it very evident that the merchandise under consideration has not been converted into any specific new article. Neither has it been so dealt with that it is limited to a definite, particular purpose, nor so processed that it is fitted to be used commercially in the manufacture of one thing only. The merchandise continues therefore to be window glass, bent—that is to say, material not yet advanced to the stage of a new manufacture.

The judgment of the Board of General Appraisers was thereupon affirmed.

We have thus somewhat exhaustively referred to these cases, because it is urged by the importers that they rule the case at bar, and this brings us to a consideration of the precise issue here.

No samples of the merchandise in the case were shown the Board of General Appraisers and none are before us, but evidence was introduced by both parties at the hearing before the board. It is unnecessary to enter into any extended review thereof.

There are various protests in this case, and all the merchandise seems to have been assessed for duty, according to value, under paragraph 105 of the act of 1909, the material part of which has already been stated, but for convenience it is again reproduced here as follows:

105. Spectacles, eyeglasses, and goggles, and frames for the same, or parts thereof, finished or unfinished, * * *.

It is followed by provisions for duty according to value.

It is in effect agreed by the parties and found by the board that the articles here involved are oval shaped glasses, finished or unfinished, and are parts of goggles. The evidence tends to show and the board found that some were made of colored glass. We understand also that some of the larger pieces are bent, probably to serve as a more complete protection to the eye, and that in the condition as imported all these glasses, whether flat or bent, colored or plain, ground or unground, were adapted and designed to be used as parts of goggles; that some were finished and ready for immediate use in goggles, while some required further treatment, but what that treatment is the record does not satisfactorily disclose.

The theory upon which they were assessed and upon which the assessment was sustained by the board seems to be that under paragraph 105 *parts* of goggles were dutiable. In the case first above referred to we construed the expression "or parts thereof" in the paragraph as applying to parts of frames for goggles but not to goggles and we see no reason to doubt the correctness of that conclusion. It was also there held that disks or glasses alone, although designed to be used as parts of goggles, were not goggles either fin-

ished or unfinished, because, as it was said, the term "spectacles, eyeglasses, and goggles" necessarily conveyed the idea of a suitably prepared glass or similar material so fitted to a frame that it could be worn as an aid or protection to the eye.

The importers strenuously insist that the merchandise is dutiable as common window glass under the provisions of paragraphs 99 and 104 of the act of 1909. The first of these paragraphs provides for certain rates of duty on common window glass and other glass unpolished, of certain sizes, the smallest mentioned containing an area of not exceeding 150 square inches, while the second imposes certain additional rates upon common window glass and other glass, silvered or unsilvered, polished or unpolished, when bent, etc., colored, etc. These paragraphs, it should be noted, are of the same legal effect so far as relates to the merchandise in this case as were paragraphs 101 and 107 of the act of 1897, construed in the case first above mentioned.

The importers further insist that the merchandise here is identical with that before us in both the cases hereinbefore referred to and therefore that they are controlling here. The Government with equal insistence urges that the claimed identity does not exist further than this: That these goggle glasses, whether finished or unfinished, are made from common window glass, as concededly were those in the former cases, so that there is an identity of original material, but claims that in this case it is shown that by a process of manufacture such material has been advanced beyond the condition of common window glass, a fact which did not appear in either of the above cases, and therefore for that reason that they are not controlling upon the issues here.

The material part of the board's finding is as follows:

From the record in this case we believe the following facts are established: That the merchandise in dispute is used primarily and solely in the manufacture of goggles and would be known as goggle glass. All the witnesses have stated that it is goggles, finished or unfinished. In some cases it is colored, in order to protect the eye. It is no longer common window glass, but articles manufactured from window glass; nor is it common window glass, bent and colored, within the meaning of paragraph 104.

The importers vigorously challenge the statement therein that "all the witnesses have stated that it is goggles, finished or unfinished," and we think that sentence standing by itself goes further than the evidence warrants, but the remainder of the finding, so far as the material facts are concerned, we understand is not challenged by the importers. Their main reliance to meet the same, as already stated, is the controlling effect of the two earlier decisions, coupled with the claim of identity of merchandise also already mentioned.

One witness (an examiner of merchandise at the port of New York who passed the importations here) was called by the importers at the hearing before the board. He testified that he had examined the invoices covered by this group of protests and that the merchan-

dise embraced by certain ones thereof marked by him with the letter "A," and which we understand embrace all the glasses in this case, was identical with the merchandise involved in the *second* case before this court above referred to, with which he said he was familiar.      He later said he believed that case covered both "finished and unfinished goggles, glasses," and again, that the articles now under consideration were similar to the merchandise involved in the *first* above-mentioned case.

By reason probably of the absence of samples and for the purpose of aiding him to describe the glasses here he was allowed to testify that certain numbered goggles, shown in a catalogue bearing the name of one of the importers, correctly represented, so far as the glass parts thereof were concerned, some of the importations here, but he did not find in the catalogue numbers corresponding to or representations of all the importations.      The parts of the catalogue so referred to were admitted as exhibits in the case and they show glasses *in* the goggles.      The witness further said that he was familiar with finished goggles and that most of the glasses covered by these protests were ready to be placed in goggles without further manufacture.

In the importers' brief it is said, referring to the spectacles, eye-glasses, and goggles as defined in the case first above mentioned, that "these are the things which, finished or unfinished, come within the purview of the statute.      The things in suit are 'admittedly parts of goggles' just as they were" in that case.      In another connection it is said "in ordinary meaning these goods are not 'goggles'; they are the glass parts of goggles."

In other words, as we understand, the importers here do not dispute but rather concede or claim that the merchandise here is in fact finished or unfinished parts of goggles, which we understand to mean, in view of the description of the merchandise given by importers' witness, that the glasses here have by cutting or other processes been made to assume the form and shape adapting them to be used in making goggles and that they are designed expressly for such use.      The undisputed fact that some are colored glasses, manifestly for the protection of the eyes, and that most of them are ready to be inserted in the goggle frames, seems to us to justify the conclusion that they are, in effect, so treated, processed, adapted, and designed for the particular use of making goggles, that they have been removed from the class of window glass of which *material* they undoubtedly are composed, and are entitled to be classified as manufactures of glass, as claimed by the Government.      The evidence taken in the case first above referred to has not been moved into the record here, and, as pointed out, no testimony was heard in the second case.

In the first case referred to there was no claim made, and consequently none considered by this court, that the articles were manu-

factures of glass. In the second case, while that claim was made, considered, and denied, it is quite apparent that the denial was based upon the conclusion that the merchandise under consideration might be used for lanterns, lamps, cameras, and possibly for many other purposes, and that it did not appear that it had been so dealt with or processed as to limit its use to one particular purpose.

Under the evidence in that case the conclusion reached was required. But here the facts are different, because the merchandise, although composed of the material (window glass) is cut to form and shape and adapted and designed for use in the making of goggles, which condition, it is manifest, quite unfits it for any other practical commercial use. The importers have not undertaken to show by any witness that the merchandise is not so fitted, adapted, or designed, but content themselves with relying on the proposition that the glass *as material* was window glass (claiming it is still such) and upon the controlling force of the former cases, all the time, however, conceding that the articles are parts of goggles, finished or unfinished, or goggle glasses, as they style them.

It should also be noted that there is no proof, other than that which may result from the evidence as to identity with or similarity to the articles in the other cases, that the glasses here are so imperfect as to produce distorted vision, as appeared in the second case. The fact, however, that some are fit to be described as "goggle glasses, finished," would tend to show that such imperfection did not exist at least in the finished glasses, and if not finished still they have been so far processed as to remove them from the window glass classification, because they are now in a condition, especially as to shape, size, and form, that has deprived them of value for any use other than in goggles, and has appropriated them definitely to that use.

We think, in view of the facts in this case, that these glasses were improperly classified and assessed and also that they are not dutiable under paragraphs 99 and 104.

The question remains what disposition to make of this case. The Government argues, if the decision of the board is not affirmed, that the plain glasses be adjudged dutiable under paragraph 109 and the colored ones under paragraph 98. The typical protest printed in the record alternatively claims under paragraph 109, but makes no claim under paragraph 98, and the protests not printed, but in the files, seem to be to the same effect.

The importers assign error below in that the merchandise was not held dutiable at 45 per cent ad valorem under paragraph 109, but no assignment of error refers to paragraph 98. The importers have not contended in this court for classification under either of said paragraphs.

We think the ends of justice are more nearly accomplished by reversing the judgment of the Board of General Appraisers as to such of these glasses as are not colored and directing reliquidation thereof at 45 per cent ad valorem as manufactures of glass under paragraph 109, and it is so ordered.

As to those composed of colored glass, so far as we are advised, they seem to be classifiable under paragraph 98 as embraced within the language thereof, "all articles of every description composed wholly or in chief value of glass, * * * colored," etc. United States *v.* Wakem (2 Ct. Cust. Appls., 411; T. D. 32170). No claim, however, being made in the protest for such classification nothing remains for this court as to such merchandise but to affirm the judgment of the board without approving the original assessment, and it is so ordered.

*Modified.*