UNITED STATES *v.* BACHE & CO. (No. 1709).[1]

GLASS SIGNS.

Glass signs made of cylinder glass, sand blasted and colored, their edges ground, bearing the word "exit" stenciled by sand blasting or etched with acid, ready for use, are too far advanced or processed to be dutiable as *glass* under paragraphs 85 and 90, tariff act of 1913. They are dutiable as *glass articles*, colored and sand blasted, paragraph 84.

United States Court of Customs Appeals, February 2, 1917.

APPEAL from Board of United States General Appraisers, Abstract 39495.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*John R. Rafter,* special attorney, of counsel), for the United States.

*Walter Evans Hampton* for appellee.

---

[1] Reported in T. D. 37011 (32 Treas. Dec., 190).

[Oral argument Dec. 12, 1916, by Mr. Hanson and Mr. Hampton.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Paragraph 84 of the tariff act of 1913 provides for "glass bottles, decanters, and all articles of every description composed wholly or in chief value of glass, ornamented or decorated in any manner, or cut, * * * colored, * * * sand blasted, * * * or printed in any manner, or ground * * *, not specially provided for in this section, * * *."

Paragraph 85 provides a duty by the pound, progressing as the surface measurement increases, upon "unpolished, cylinder, crown, and common window glass."

Paragraph 90 imposes an ad valorem rate in addition upon "* * * cylinder, crown, or common window glass, * * * polished or unpolished, when * * * ground, * * * sanded, * * * flashed, * * * colored, * * * or decorated, * * *."

The merchandise hereinafter described was assessed under paragraph 84, was by the importers claimed properly classifiable under paragraph 85, and dutiable under it and paragraph 90.

The board sustained the protest and the Government appeals.

The merchandise is a rectangular colored glass sign, size 10 by 12 inches with the word "exit" upon it.

We understand from the undisputed evidence of importers that it is made in the following manner: First, the color is imparted to the molten glass while it is on the blowpipe. This process is known as "flashing" and the color on one side of the sample before us is a "flashed ruby." The other side is uncolored. After the coloring matter has been so applied the glass is blown and manipulated until it assumes the form of a cylinder from which the name "cylinder glass" is derived, resulting as in this case with the color on one side only. At the proper stage in the operation this glass cylinder is cut open and the material flattened into sheets varying in sizes from 50 to 57 inches in length and 30 to 36 inches in width. It then is indifferently called "window glass" or "cylinder glass." The design is then ground on the surface of the glass by sanding, which is a sand-blasting process and is duplicated as many times as possible on each of the large sheets, which is afterwards cut into pieces, each carrying one design, in this case the "exit" sign. The four edges of each sign are ground or smoothed off after the large sheet is cut up conformably to the individual designs. The sand-blast process, it may be said by way of explanation, is really a stenciling process accomplished by placing over one side of the glass a pasteboard stencil against which the sand blast is directed, with the result that the letters cut out of the stencil are cut into the glass. These "exit" signs were made by applying the stencil to the colored side of the

large sheet. The other side has also been ground by the same sand-blasting process. Some of the witnesses said that sometimes an acid is used upon the colored surface of the glass to produce the letters instead of the sand blast.

These glass signs are ready for use in the condition imported and are either set in a wall or in frames or otherwise, according to the place and particular purpose of their use.

Commercially, as imported, they are fit for no other practical use than as "exit" signs.

Upon this state of facts the Board of General Appraisers sustained the protest because the evidence, as it said (and it does), clearly established that the glass of these signs was unpolished cylinder or common window glass which had been sanded and flashed within the provisions of paragraph 90.

We think it is clear that the board lost sight of the distinction between window glass as a material, whether or not subjected to any of the various treatments mentioned in paragraph 90, and to such material *made into a finished article* such as these glass signs and therefore erred in sustaining the protest.

The recited facts show beyond question that the original material has been made into something, a thing that is, as imported, ready for use, a use to which as window glass as material it could not be put, and in fitting it for such use it has been commercially excluded from other uses. It is a sign pure and simple, containing or con-veying definite and certain information to the beholder and is, we think, clearly an *article* colored and sand blasted within the scope of paragraph 84. Tilge & Co. v. United States (3 Ct. Cust. Appls., 97; T. D. 32360); United States v. Foscato (6 Ct. Cust. Appls., 15; T. D. 35251); American Thermo-Ware Co. *et al. v.* United States (6 Ct. Cust. Appls., 218; T. D. 35465.)

The judgment of the Board of General Appraisers is *reversed.*