BACHE & CO. v. UNITED STATES (No. 2156).[1]

1. CONSTRUCTION, PARAGRAPH 90, TARIFF ACT OF 1913—GLASS AND MANUFACTURES OF.

Paragraph 90, tariff act of 1913, levying additional duty on glass "when bent, ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, or decorated," negatives the idea that glass imported in shapes and sizes suitable for use must be classified as manufactures of glass rather than as glass, since manifestly some of these processes could not advantageously be applied to pieces of glass unless they were already in the shape and size in which they could be finally used.

2. CONSTRUCTION, PARAGRAPHS 85, 88, 90, AND 95—GLASS AND MANUFACTURES OF.

Glass is not taken without the classification of paragraphs 85, 88, and 90, tariff act of 1913, as glass and placed within that of paragraph 95 as manufactures of glass by reason of being in a size and form available for immediate use. This result would follow only in case the glass forms should be exclusively appropriated to a given use as manufactured articles.

3. CONSTRUCTION, ADMINISTRATIVE PRACTICE—LEGISLATIVE SANCTION.

It is a well-known rule of construction in tariff cases that a long-established departmental practice in the classification of merchandise for duty should be regarded with favor by the courts, and that "the implied approval and adoption thereof by Congress in the reenactment of the applicable provisions of the law in essentially similar terms should have the effect and consequence of establishing the status of the article for tariff purposes and that this should prevail until changed by legislative action."

4. UNITED STATES v. BACHE & CO. (7 CT. CUST. APPLS. 445; T. D. 37011) EXPLAINED—GLASS AND MANUFACTURES OF.

The glass exit signs in United States v. Bache & Co. (7 Ct. Cust. Appls. 445; T. D. 37011) were denied classification as glass and held to be manufactures of glass, not because they were of proper form and size that they should be used for their destined purpose without further manipulation, but because they were completely manufactured articles fit for one use only.

5. GLASSES FOR CLOCKS AND COMPUTING SCALES—GLASS AND MANUFACTURES OF.

Pieces of glass with beveled edges, made to order as to size and shape for use as glasses for clocks and computing scales, but capable of various other commercial uses, are beveled glass under paragraphs 85, 88, and 90, tariff act of 1913, and not manufactures of glass under paragraph 95.

---

[1] T. D. 39129.

United States Court of Customs Appeals, May 9, 1922.

Appeal from Board of United States General Appraisers, G. A. 8478 (T. D. 38910).

[Reversed.]

*Walter E. Hampton* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

[Oral argument April 25, 1922, by Mr. Hampton and Mr. Lawrence.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

This case relates to two importations of glass. One of these consisted of pieces of polished plate glass, oval in shape with beveled edges, the cross dimensions being approximately 13 by 16 inches, having a thickness of three-eighths of an inch. It is said that these were designed for use in the manufacture of computing scales. The second class consisted of circular pieces of window glass having beveled edges, each piece having a diameter of $2\frac{1}{16}$ inches. It is said that these were designed for use as clock glasses. All of the glass was clear and unground, having no markings of any kind upon its surface.

The appraiser described the merchandise as "beveled clock glasses made from cylinder glass, and computing scale glasses oval in shape and beveled, made from plate glass." It was returned for duty at 30 per cent ad valorem under the provision for manufactures of glass, contained in paragraph 95 of the tariff act of 1913, and was assessed with duty by the collector accordingly.

The importers protested against the assessment, claiming that the merchandise should be classified for duty in part as common window glass and in part as plate glass under paragraphs 85 and 88 of the act, and should be assessed thereunder at various rates of duty according to size, and in addition should be assessed 4 per cent ad valorem under paragraph 90 because of the beveled condition of the glass.

The protest was submitted to the board upon exhibits and testimony, and was overruled. The importers have appealed from that decision.

It is unnecessary in this decision to copy the paragraphs cited in the protest. It is sufficient to note that paragraph 85 imposes duty upon common window glass at specific rates which are graduated according to the size of the glass. And, similarly, duty is imposed by paragraph 88 upon cast polished glass, if unsilvered, at specific rates varying with its size; while in paragraph 90 it is provided that both descriptions of glass shall be subject to a duty of 4 per cent ad valorem in addition to the rates otherwise chargeable upon them, if "bent, ground, obscured, frosted, sanded, enameled, beveled, etched, em-

bossed, engraved, flashed, stained, colored, painted, ornamented, or decorated."

On the other other hand, paragraph 95 of the act imposes duty, among other things, upon "all glass or manufactures of glass or paste or of which glass or paste is the component material of chief value, not specially provided for" in the act.

It may be repeated that the importers claim assessment for the merchandise under the several provisions for common window glass and polished plate glass, beveled, under paragraphs 85, 88, and 90 aforesaid, while the Government contends for its assessment as manufactures of glass under paragraph 95 aforesaid.

It is clearly established by the testimony that in point of component materials and of the methods and processes employed in its production as well as its character in general, the imported glass would be entitled to the description of common window glass, and of plate glass, beveled; and that description should govern in this case unless negatived by the fact that the glass was made and imported in sizes which are suitable for immediate use as clock glasses and computing scale glasses. It appears also that the glass was made in these sizes according to patterns prescribed by the purchaser.

It appears, however, that the sizes and forms of the present importations, while making them, respectively, suitable for use as clock glasses and computing scale glasses, do not have the effect commercially of appropriating them exclusively to those uses nor of restricting their use to those purposes only. It appears, furthermore, that many stock sizes and forms of glass are imported which are capable of use without alteration, or which may be reduced to other forms or sizes for use. The following extracts from the testimony of the witness, Sobel, establish and illustrate that fact:

General Appraiser McClelland. My question mainly is what the instruction "cut to pattern" means. Whether it is cut to pattern for some particular use that the customer has?

Witness. That would be the conclusion we should reach, but, as I said there, if an order came from a jobber, a jobbing house, for glass cut to pattern, we would hardly know what it would be used for. Of course we would draw our own inferences, but if we got an order from some scale manufacturer specifying polished plate glass three-eighths inch thick, edges beveled, we would know that was intended for some part of a scale.

By General Appraiser McClelland:

Q. But in any case would it convey to you that it was destined for some particular use?—A. That would be true about any article of glass that is imported.

Q. Cut to pattern?—A. Even if not; for instance picture glass. The picture framer says, send me one case 12 by 16, 100 of 12 by 16—12 inches by 16. That is going to be used in the actual size in which it is imported in the frame.

Q. But those are standard sizes?—A. They are, in a way, but there are a great many sizes that are not standard.

Q. Exhibit 1, for instance, is not a standard size, is it?—A. It is a standard size for certain people; yes, sir.

Q. What I want to know is this: Whether, when you get instructions, such as you detailed, to cut the glass to pattern, whether that does not convey to you that the pattern is prepared so that the glass may be cut for a particular use?—A. That is true in every single case, of every order that you——

Q. Cut to pattern?—A. Whether cut to pattern or not.

Q. I am just confining it to cases where you cut to pattern.—A. Certainly, to be intended for some use; either might be used for window or a table top, or a transom, or tray, or scale, or a porthole, or a thousand and one things. This particular sample here——

Mr. HAMPTON. Which one?

A. No. 1 might be used for a scale, it might be used for a tray, for a top for a desk, and other innumerable things that it could be used for. Of course, if it was shipped to a jobber, we could not tell what it would be used for. We would simply use our own opinion that it might be used for any one of the things mentioned.

The foregoing testimony and an inspection of the exhibits convince us that the glass forms now in question are capable of various other commercial uses in addition to those named by the appraiser. And upon these facts we conclude that the merchandise when imported had retained its original character as window glass and plate glass, beveled, and had not been advanced to the status of a new or different manufacture. The only incident or characteristic which is cited as having thus advanced the tariff status of the glass is the fact that it was made to order in a prescribed shape and form. But it must be observed that paragraph 90 provides for an additional duty of 4 per cent ad valorem upon such glass when treated by various processes, specifically when ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, and decorated. Accordingly it must be concluded that the application of those processes alone should not have the effect of converting window or plate glass into a new manufacture, but should simply subject it to the increased assessment provided by the paragraph. This fact negatives the view that if such glass be imported in a form suitable for use, it should for that reason be assessed as a manufacture of glass For manifestly some of the processes thus allowed could not advantageously be applied to pieces of glass unless they were already in the shape and form in which they could be finally used. For example, the edges of a piece of glass could hardly be beveled advantageously unless the glass were already in a shape ready for use. The same statement would doubtless apply in some measure to the processes of enameling, embossing, engraving, ornamenting, or decorating. It seems indeed to be within common knowledge that in many if not in most instances such processes could not be applied with commercial advantage or economy to stock sizes of glass indiscriminately, but would naturally require that the pieces so treated should be in a size and form fit for immediate use. It will be noted, however, that these processes do not in any case imply that the pieces so treated would thereby necessarily be appropriated

exclusively to a single or peculiar use, or made incapable of any use except one.

We believe therefore that pieces of plate or window glass which otherwise respond to the descriptions contained in paragraphs 85, 88, and 90 are not advanced to the status of manufactures of glass because of being in a size and form available for immediate use, but that this result would follow only in case the glass forms should be exclusively appropriated to a given use as manufactured articles. We think that the former decisions of this court sustain that conclusion.

In the case of United States v. American Thermo-Ware Co. (2 Ct. Cust. Appls. 9; T. D. 31571) the court dealt with "oval-shaped glasses suitable for the manufacture of automobile goggles." These were held to be dutiable as common window glass, bent, under paragraphs 101 and 107 of the tariff act of 1897, as against the collector's classification of glass lenses, ground and polished to a spherical, cylindrical, or prismatic form.

In United States v. American Thermo-Ware Co. (4 Ct. Cust. Appls. 21; T. D. 33218) the merchandise was certain disks or pieces of glass, bent, used in the manufacture of auto goggles. The court held them to be dutiable as window glass, bent, under paragraphs 99 and 104 of the tariff act of 1909. Judge Smith said for the court:

> But apart from all that, there was in the case referred to uncontradicted evidence to the effect that the glasses might be and were used for other purposes than that of making goggles. From this it would seem that the merchandise has not been so manipulated or processed as to remove it from the class of manufactures specially provided for as window glass, bent, much less to put it in the category of manufactures of glass not specially provided for.

In General Electric Co. v. United States (5 Ct. Cust. Appls. 528; T. D. 35176) the merchandise was parabolic mirrors, ground and silvered, and these were held to be dutiable as cast polished plate glass, silvered and bent, under paragraphs 103 and 104, tariff act of 1909. It should be noted that paragraph 103 enumerated "silvered and looking-glass plates," and contained a proviso that none of these "when framed, shall pay a less rate of duty than that imposed upon similar glass of like description not framed but shall pay in addition thereto upon such frames the rate of duty applicable thereto when imported separately."

In American Thermo-Ware Co. v. United States (6 Ct. Cust. Appls., 218; T. D. 35456) the importation was certain oval-shaped glasses suitable for the manufacture of automobile goggles. The glass was shown by the testimony to be "cut to form and shape and adapted and designed for use in the making of goggles, which condition, it is manifest, quite unfits it for any other practical commercial use." The court, furthermore, said of the articles "they have been so far processed as to remove them from the window-glass classification,

because they are now in a condition, especially as to size, shape, and form, that has deprived them of value for any use other than in goggles, and has appropriated them definitely to that use." The court held that articles of such a description were manufactures of glass.

In United States *v.* Bache & Co. (7 Ct. Cust. Appls. 445; T. D. 37011) the merchandise was glass signs made of cylinder glass, sand-blasted and colored, with edges ground, bearing the word "exit" stenciled thereon by sand-blasting or etched with acid, ready for use as exit signs in theaters and other public auditoriums. It was held by the court that while the original material was cylinder glass, nevertheless the article as manufactured was "ready for use, a use to which as window glass material it could not be put, and in fitting it for such use it has been commercially excluded from other uses." The court said: "It is a sign pure and simple, containing or conveying definite and certain information to the beholder and is, we think, clearly an *article* colored and sand-blasted within the scope of paragraph 84."

In United States *v.* Schrenk & Co. (7 Ct. Cust. Appls. 451; T. D. 37013) the merchandise consisted of two polished cylinder glass sheets glued permanently together with a rim of adhesive substance to keep dampness from between them, which was designed for use as material for automobile wind shields. It was held by the court that the article thus produced was a manufacture, or at least a partial manufacture, sufficient to remove the component pieces of glass from the classification of polished glass. The court made note of the fact that the alteration in the condition of the glass had not been accomplished by means of any of the processes specified in paragraph 90 of the act.

It appears that provisions substantially similiar to those now in question existed in the tariff revision of 1890, and in all subsequent ones, including the tariff act of 1913. And it appears furthermore almost without contradiction that it was the practice under the various acts to classify and assess such merchandise as this under the enumeration of window glass or plate glass, and not as manufactured articles composed of glass. That practice was never either expressly or impliedly altered by legislative enactment, but was changed recently by departmental orders. These orders were predicated upon the department's interpretation of the decisions of this court above cited, which were understood to justify the present assessment. The instructions were published as T. D. 37316 and T. D. 39039. The last named, dated March 16, 1922, contained the following language:

SIR: The department is in receipt of your letter of the 17th ultimo, inclosing a communication from the appraiser at your port in regard to a proposed change of

practice in the classification of cylinder, crown, or window glass and plate glass cut to size or otherwise prepared or fitted for immediate use in its condition as imported.

It appears to have been the practice to classify cylinder, crown, or window glass and plate glass cut in size such as 7 by 9 inches, 14 by 16 inches, and the like, and glass cut or pressed in circular, oval, or other forms and of definite sizes intended to be used as imported without further manipulation under the provisions of paragraphs 85 to 90 of the tariff act of October 3, 1913, as material and not articles.

In view, however, of the decision of the United States Court of Customs Appeals (T. D. 37011), in which the court distinguished between material and articles, and in view of subsequent decisions of the Board of United States General Appraisers (Abstracts 44737 and 44738), the department concurs in the proposed change of classification.

It may be noted that the decision of this court, cited above as T. D. 37011, is the case of United States v. Bache & Co. (7 Ct. Cust. Appls. 445), concerning glass exit signs, already referred to above. The abstract decisions of the board cited by the department relate to merchandise substantially similar upon principle to that now in question, the board also referring especially to the Bache & Co. case as authority.

We think that the interpretation placed by the board and the department upon the decision in question is a mistaken one. The glass exit signs were distinctively new articles, having a new name, a peculiar and exclusive use, and were utterly unfitted for any other use whatever. They certainly differ in principle from 7 by 9 and 14 by 16 window glass.

Furthermore, it is a well-known rule of construction in tariff cases that a long-established departmental practice in the classification of merchandise for duty should be regarded with favor by the courts, and that "the implied approval and adoption thereof by Congress in the reenactment of the applicable provisions of the law in essentially similar terms should have the effect and consequence of establishing the status of the article for tariff purposes, and that this should prevail until changed by legislative action."—Osceola Mill & Elevator Co. v. United States (11 Ct. Cust. Appls. 139; T. D. 38938).

This rule has an important bearing in the instant case, since undoubtedly the practice prevailed under repeated tariff revisions of classifying and assessing such merchandise as this as common window glass and polished plate glass, beveled, under the paragraphs cited in the protest and their predecessors. This fact abundantly appears from the testimony and also from the published decisions, and indeed is recognized by the department's letter of instructions above in part copied. We feel safe in saying that so sweeping a change of procedure as that proposed by the department, whereby standard sizes of window glass would be withdrawn from classification as such and instead thereof assessed with a higher rate of duty as manufactures of glass, should not take place without legislative action.

We therefore hold, under the principles above indicated and in accordance with the long-established practice above spoken of, that the present importations are not dutiable as manufactures of glass under paragraph 95, but as beveled window and plate glass, respectively, as claimed by the importers in the protest.

The decision of the board overruling the protest is accordingly reversed and the case remanded. *Reversed.*