(C. D. 179)

WM. BRAND & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 15, 1939)

*James W. Bevans* for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: The suits listed in schedule A, hereto attached and made a part hereof, present the question of the proper classification of certain mica upon which duty was levied at 45 per centum ad valorem under paragraph 208 (d) of the Tariff Act of 1930, as mica films and splittings cut or stamped to dimensions. Plaintiffs claim the same to be properly dutiable at 40 per centum ad valorem under paragraph 208 (e) of said act, as manufactures of mica, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for in any other paragraph of this act.

The evidence shows that the merchandise consists of mica cut to sizes ⅝″ x ⅝″ and ⅝″ x ⁵⁄₁₆″. "These were imported for a customer who manufactures what is known as electrical condensers, mica moulded condensers, and these specifications we gave to our supplier abroad were identical to those that were in turn given to us by our customer, and that he had to submit his specifications in every respect as to dimensions." "They were used in the exact condition in which imported." "Smaller pieces could be stamped out of these, but it would not be practical, whatsoever." The condenser separators in this case are the same as those in the case of *William Brand* v. *United States*, T. D. 45361, except as to shape and possibly thickness, and these have no holes punched in them while in the former case the condenser separators had holes in them. With further reference to

the difference in the merchandise in this case and in the former case, one witness stated:

In the former case, the mica pieces were imported to one of our customer's specifications, who had certain specifications as to size and thickness, and in this case the mica was imported to another customer's specifications, which called for mica without holes, different shape.

The pieces of mica in this case were used in the condition in which imported without any change of any kind or description, and were not suitable for and could not be used for any other purpose. This mica, when it is received by the customer, is assembled to form a condenser. With reference to the use to which this mica is put by the customer, one witness testified as follows:

We assemble the mica pieces with tinfoil, alternately placing a piece of tinfoil over a piece of mica, and then another piece of mica on top of the tinfoil, until we build up a pile of layers composed of tinfoil and mica. This gives us a metallic film of two metals, mica and tinfoil united, which forms a condenser. That is a condenser.

This mica is ordered in the exact dimensions, length, width, and thickness in which it is to be used, and in the manufacture of condensers therefrom it is not changed in any respect. When these pieces of mica are received by the customer, at which time they are in the same condition as when imported, they are fully finished and completed for use in these condensers. As a commercial proposition one could not stamp from these pieces of mica as imported any other article of different form and shape.

The question for determination is whether or not pieces of mica which have been cut to the exact dimensions, length, width, and thickness suitable for use as an integral part of a condenser, and which are not capable of any other use, are manufactures of mica.

The proper classification of mica disks was before this court in *Munsell* v. *United States*, T. D. 41563. In disposing of that case this court, among other things, said:

From the record we are satisfied that these disks have but one specific use, to wit, for fuse plugs, and that they are ready for such use as imported, some manufacturers using thin and others thick disks, but all for the one purpose. They are, therefore, in our opinion, not to be regarded merely as cut mica, which would clearly indicate mica, as material, but rather as an article composed of mica and dedicated to a definite and exclusive use as part of another article, to wit, as part of an electric fuse.

    *     *     *     *     *     *     *

The importers stress the fact that because the present disks may have to be split in order that certain manufacturers may use them, their classification as manufactures of mica is thereby nullified. We do no concur in that view of the law. We think the controlling and determinative fact is that these disks in their imported condition are concededly used for one single purpose, and that many of them are capable of such use as imported without the slightest adjustment or fitting or any work whatsoever being applied to them; that they were stamped into circles

for electric fuses and for no other purpose, and that that exclusive use removes them from the class of material, cut mica, which, we gather from the testimony, comprises mica in various stock sizes which may be made adaptable to different uses, but which are not shown to belong to any specific article exclusively.

The above decision was rendered under the Tariff Act of 1922, under which the rates of duty were exactly reversed, i. e., the lower rate of duty applied to mica cut or trimmed, and mica splittings, and the higher rate applied to manufactures of mica. Applying the same reasoning by which the merchandise was assessed at the higher rate in the *Munsell* case, *supra*, to the facts in this case, it would appear that the importer was entitled to the lower rate of duty on the mica in this case.

In the case of *Konishi* v. *United States*, 17 C. C. P. A. 355, the appellate court in determining whether certain pieces of glass of various shapes and sizes, known as blanks, and used, according to their respective types, for the making of watch crystals, locket sides, and atomizer tops, were properly dutiable as manufactures of glass or as cylinder glass, the court said:

This court is committed to the doctrine that an imported article may be classified as a manufacture of anything only when it has been dedicated to some exclusive use. *United States* v. *American Thermo-Ware Co.*, 4 Ct. Cust. Appls. 21, T. D. 33218; *American Thermo-Ware Co.* v. *United States*, 6 Ct. Cust. Appls. 218, T. D. 35465; *United States* v. *Bache & Co.*, 7 Ct. Cust. Appls. 445, T. D. 37011; *Bache & Co.* v. *United States*, 11 Ct. Cust. Appls. 314, T. D. 39129; *United States* v. *Berger*, 13 Ct. Cust. Appls. 362, T. D. 41258. This exclusive use is not necessarily confined to any one article, but may cover "a particular kind or class of articles." *A. H. Ringk* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769. For instance, it need not be shown, in the case at bar, that the imported articles are advanced to the point where they are dedicated to the use of any one kind of watch crystals; if they can be used for watch crystals, generally, that is sufficient.

\*  \*  \*  \*  \*  \*  \*

It will therefore be seen that the imported merchandise does not have several uses, but that each particular item has its own exclusive use. In other words, *at the time it enters the commerce of this country, it is dedicated to a particular use and has therefore become, in every sense, a manufacture of glass.* [Italics ours.]

The evidence in this case clearly dedicates the merchandise to the exclusive use of making condenser separators. Therefore, following the cited authorities, we hold all the merchandise on the invoices covered by these suits to be properly dutiable at 40 per centum ad valorem under paragraph 208 (e) of the Tariff Act of 1930 as manufactures of mica, as claimed by the plaintiff. This holding does not appear to be in conflict with any of the authorities cited by counsel for the defendant.

To the extent indicated the specified claim is sustained; in all other respects and as to all other merchandise all the claims in said suits are overruled. Judgment will be rendered accordingly.