(C. D. 337)

GENERAL DYESTUFF CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 16, 1940)

*Eugene R. Pickrell* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, and *Frank X. O'Donnell, Jr.*, junior attorney), for the defendant.

Before Brown and Tilson, Judges

Brown, Judge: This suit against the United States was brought at New York for the recovery of duties claimed to have been improperly exacted by the collector of customs on an importation from Germany of a commodity known as I. G. Wax Z. Duty was assessed thereon at the rate of 20 per centum ad valorem under the provisions of paragraph 1536 of the Tariff Act of 1930 reading, so far as pertinent, as follows:

* * * manufactures of * * * wax, or of which these substances or any of them is the component material of chief value, not specially provided for * * *.

It is claimed to be entitled to free entry under the provisions of paragraph 1796 of the same act reading as follows:

Wax: Animal, vegetable, or mineral, not specially provided for.

or, alternatively, to be entitled to free entry under paragraph 1733, which reads as follows:

Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, paraffin, and paraffin oil not specially provided for.

plus 1 cent per pound under the provision in section 601 (c) (4) of the Revenue Act of 1932 for paraffin and other petroleum wax products.

Counsel have stipulated that the merchandise—

is produced from Montan Wax by the following process:

Montan Wax, which is obtained from lignite or brown coal, is bleached with chromic acid;

Bleached Montan Wax is then reduced with iron powder and hydrogenated with a nickel catalyst;

The resulting hydrocarbon is the merchandise at bar.

The evidence produced at the trial consists of a sample of the involved merchandise, marked Exhibit 1, the testimony of a witness who identified the same, and the testimony of three chemists, all on behalf of the plaintiff.

By uncontradicted competent evidence plaintiff has established that analysis of the merchandise at bar shows the following results:

| | |
|---|---|
| Acid number | None |
| Ester number | None |
| Saponification number | None |
| Melting point | 85° C. |
| Completely melted | 99° C. |
| Carbon | 84. 87% |
| Hydrogen | 14. 88% |
| Very difficultly soluble in chloroform | |
| Insoluble in the usual organic solvents | |

From the foregoing analysis, which was made by him, plaintiff's witness Seil, a well-qualified consulting and analytical chemist, con-

cluded that the merchandise was a hydrocarbon wax similar to paraffin except that its melting point was some 30 degrees Centigrade higher. Plaintiff's witness Padgett, a chemist shown to have had long experience in research, practical application, and in the manufacture of waxes, came to the same conclusion, based upon the results of Dr. Seil's analysis and a physical examination made by him of a sample of the merchandise in issue. Plaintiff's witness Sweet testified that besides being a chemist his work was as a technical salesman and developer for the plaintiff of waxes, and that he had sold the merchandise in issue to manufacturers of wax polishes, as a substitute for paraffin; to manufacturers of drinking cups, to raise the melting point of the product so that hot beverages could be placed in them, and to manufacturers of imitation food displays, of anodyzed aluminum plates, and of coated or impregnated paper, in each case because of its high melting point. Mr. Sweet also testified that it has the same uses as wax but in addition has the advantage of a melting point some 30 degrees higher than paraffin wax, and it should be noted that witness Padgett testified that some of the petroleum waxes also have a melting point as high as that of the wax in issue.

In approaching the determination of the issue herein it must be remembered that the competing provisions of the tariff act are those for "mineral wax" and "manufactures of * * * wax or of which * * * [wax] * * * is the component material of chief value." Therefore, if the merchandise in issue is still no more than mineral wax, no matter how many processes it has been subjected to, it is properly dutiable as claimed by the plaintiff, while if by reason of such processes it has risen to the dignity of a manufacture of wax the collector's classification must be upheld.

The doctrine expressed in *Hartranft* v. *Wiegmann*, 121 U. S. 609, has been long accepted as settled law in customs cases that to constitute a manufacture of a material an article must have been—

manufactured into a new and different article, having a distinctive name, character or use.

In support of the collector's classification of the merchandise as manufactures of wax the Government contends that because of the treatment to which it was subjected the merchandise at bar attained a distinctive character different from that of the original material, in that the montan wax lost its oxygen, acid, and saponifiable matter.

The "character" of a thing is defined by Webster's New International Dictionary as—

The sum of qualities or features by which a thing is distinguished from others; essential peculiarity.

and by Funk & Wagnalls' New Standard Dictionary as—

The quality or qualities commonly attributed to any person or thing; * * *
* * * * * * *

That by which a thing is especially known or distinguished; a quality; property; condition; characteristic; as ductility is a *character* of gold; deciduous antlers are a *character* of deer; the cap is a *character* of mushrooms.

Referring to the character of mineral wax plaintiff's witnesses considered physical characteristics such as crystalline appearance, melting point above room temperature, and comparability with paraffin wax and other waxes and compounds. These are the characteristics which determine the character of mineral wax and the merchandise at bar possesses them. It follows therefrom that it has the character of mineral wax.

While it is true that in the processes to which it was subjected it was bleached and its color was thereby changed, presumably from brown or black to white, and it lost oxygen, organic acids, and saponifiable matter, yet none of these changes affected its character as mineral wax; it retained that character. The record shows that other mineral waxes have the same color and that some have melting points as high as that of the merchandise in the case at bar. Bleaching, reduction, and hydrogenation probably advanced the montan wax in value and condition and modified its chemical structure, but they did not alter its character as mineral wax.

It is further contended by the Government that by reason of having a high melting point the wax in issue acquired a new use, i. e., as a product which can be employed wherever a wax article of high melting point is desired. It nowhere appears what the melting point of the original montan wax was, but assuming, as both plaintiff and defendant seem to do, that the processes to which the article in issue was subjected had the effect of raising its melting point and so making it useful in other ways than it had been before, nevertheless the potentiality for use thus brought about is not that which the rule requires in order to bring the article within the scope of the term "manufactures of wax."

In *Konishi Kotakudo Co. (Inc.) v. United States*, 17 C. C. P. A. 355, T. D. 43798, it was said:

This court is committed to the doctrine that an imported article may be classified as a manufacture of anything only when it has been dedicated to some exclusive use. * * * [Citing cases] * * * This exclusive use is not necessarily confined to any one article, but may cover "a particular kind or class of articles."

The new uses to which the merchandise at bar is applicable do not embrace merely a "particular kind or class of articles"; rather they embrace a wide variety of articles ranging from wax polish to coated or impregnated paper. In *United States v. American Thermo-Ware Co.*, 4 Ct. Cust. Appls. 21, T. D. 33218, one of the cases cited by our appellate court in the *Konishi Kotakudo Co.* case, *supra*, the court

said of certain bent disks of glass which could be used in the manufacture of goggles, lanterns, carriage lamps, cameras, and for other purposes:

These varied uses make it very evident that the merchandise under consideration has not been converted into any specific new article. Neither has it been so dealt with that it is limited to a definite, particular purpose, nor so processed that it is fitted to be used commercially in the manufacture of one thing only. The merchandise continues therefore to be window glass, bent—that is to say, material not yet advanced to the stage of a new manufacture.

So in the case at bar. The merchandise continues to be mineral wax not yet advanced to the stage of a new manufacture.

There remains to be considered only the Government's contention that the merchandise at bar constitutes a manufacture by reason of the fact that it now bears a new name—I. G. Wax Z. Although in the rule laid down in *Hartranft* v. *Wiegmann, supra,* the three attributes of a manufacture of a material are stated in the alternate, it is difficult to conceive of manufacturing effect which would result in no change in the character of a material or the use to which it might be put but which would result in the acquisition of a new name. In addition, "I. G. Wax Z." is a proprietary name, whereas the rule evidently contemplates a new name descriptive of the article.

From the entire record we are satisfied that the imported merchandise consists of a mineral wax advanced in condition but which has not yet reached the stage of a manufacture of wax. Since the term "mineral wax" as used in paragraph 1796 is not restricted to crude mineral wax and there is no shown contrary legislative intent, judicial dedision, administrative practice or commercial designation, that term includes all forms of the article. *Nootka Packing Co. et al.* v. *United States,* 22 C. C. P. A. 464, T. D. 47464.

The protest claim for free entry of the merchandise under paragraph 1796 is therefore sustained. Judgment will issue accordingly.