OSCEOLA MILL & ELEVATOR CO. ET AL. *v.* UNITED STATES (No. 2097).[1]

1. CONSTRUCTION—DOUBT FAVORS IMPORTER.

When an issue stands at an even balance after a consideration and comparison of all other bases of judgment in the case, the importer is entitled to prevail.

2. SAME—LEGISLATIVE SANCTION OF ADMINISTRATIVE PRACTICE.

Congress is presumed to know what meaning is accorded the language of a statute in its administration; and the reenactment of such language must be regarded as an adoption of such meaning.

3. RYE MIDDLINGS OR SHORTS AS RYE FLOUR.

Rye middlings or shorts having been classified by customs officers as rye flour through the enactment of substantially the same language in successive tariff acts from 1861 to 1909, inclusive, they must receive the same classification in the act of 1913, since this act manifests no purpose to change it; and the decision of the Board of United States General Appraisers sustaining their classification as a nonenumerated manufactured article under paragraph 385, tariff act of 1913, rather than as rye flour under free list paragraph 589 is reversed.

United States Court of Customs Appeals, November 16, 1921.

APPEAL from Board of United States General Appraisers, Abstract 44085.

[Reversed.]

*Ralph B. Stephens* (*Ernest F. A. Place* and *Frederick W. Brooks, jr.*, of counsel) for appellants.

*Wm. W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell,* special attorneys, of counsel), for the United States.

[Oral argument Oct. 4, 1921, by Mr. Place and Mr. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise is described in the invoices as "rye middlings." It is also known as "rye shorts," the two names being interchangeable. Importation was made at the ports of St. Paul and Minneapolis, and of Pembina, N. Dak.

---

[1] T. D. 38938.

Duty was assessed upon it at the rate of 15 per cent ad valorem, as a nonenumerated manufactured article, under paragraph 385 of the tariff act of 1913.

The importers protested against the assessment, claiming free entry under the classification of rye flour contained in paragraph 589 of the free list of that act, which reads as follows:

589. (Free list.)  Rye and rye flour.

The protest was submitted upon exhibits and testimony to the Board of General Appraisers and was overruled. The importers appeal

The commodity is produced by the milling of rye grain. In the operation the bran is first removed, also a certain percentage of the inner flour of the grain. The residue, composed in part of the coarser elements of the rye and in part of the inner flour, all ground together, comprises the article now in question. It is, of course, evident that this may be made rich by leaving a large part of the inner flour in the composition, or it may be made lean by more exhaustively milling out the better part of the grain.

The article is used as a stock feed, although it is said that for a time during the World War it was used for human consumption, and indeed that it is regularly used to some extent as food by the poorer people of northern Europe.

It is claimed by the importers that the present article was so milled as to leave in it a large percentage of the better or inner substance of the grain; there is indeed testimony to the effect that 70 per cent of the article is composed of such inner flour, and that the article taken as a whole is in fact a coarse grade of rye flour, and entitled to be classified as such for tariff purposes.

The board, however, found against the claim of the protestants, and held that the commodity in fact is not rye flour nor entitled to free entry under that enumeration. The board therefore sustained its assessment as a nonenumerated manufactured article. From this decision the importers appeal.

At the trial before the board a sample of the commodity was produced and the testimony of various witnesses was taken. The milling processes above referred to were described at some length by the witnesses, and various answers were made to the question whether the article was "rye flour."

One of the shippers, Mr. Brundriff, said that the merchandise consists of rye middlings and the regular mill run of dark rye flour; that it is in reality a "rye feed flour," and should be known as "just rye feed flour." He added, "The product we sell as rye feed flour and this are the same."

The witness Crocker said that he would call the article "a very fancy rye feed containing a large, probably, a large percentage of flour."

The witness Warnes said that the article was not rye flour, but was a residue left after "quite a proportion of good rye flour had been extracted" from the grain.

It should be remembered that the commodity was invoiced as rye middlings, and that it is also called rye shorts, the claim of the importers, however, being that because of the large percentage of inner flour left in the article it is entitled to the name of rye flour or rye feed flour also.

Without discussing the testimony in detail, we may say that the board's decision against the importers is not unsustained by the evidence, and that if this appeal depended upon the question of evidence alone it should be overruled.

There remains, however, an important issue upon which we are constrained to disagree with the board's decision. This arises upon the importers' claim of a long-continued administrative practice, whereby the product in question has acquired a tariff status as rye flour, which should not now be departed from except upon legislative action to that effect.

In section 19 of the tariff act of March 2, 1861, a duty of 10 per cent ad valorem was laid eo nomine upon "rye flour." The act contained also a paragraph whereby a duty of 20 per cent ad valorem was levied upon nonenumerated manufactured articles (sec. 24). Under that act the Treasury Department issued official instructions in a letter dated June 3, 1870, addressed to the collector at the port of Buffalo, and published in T. D. 677, reading as follows:

(677.) "Rye shorts" liable to 10 per cent duty as "rye flour."

"Rye shorts," described as a kind of rye flour or coarse flour of rye, should be classified as "rye flour," liable to 10 per cent duty under section 19 of the act of March 2, 1861.

It can hardly be doubted that the commodity thus referred to as "rye shorts," also as a "kind of rye flour or coarse flour of rye," was essentially similar to the article now in question. It therefore appears that under the tariff act of 1861 the Treasury Department officially promulgated a ruling whereby a product like this was declared to be dutiable as rye flour at 10 per cent ad valorem, the alternative to which would have been an assessment of 20 per cent ad valorem under the "nonenumerated" provision of the act. The act, it may be noted, contained no eo nomine enumeration of "rye shorts" or "rye middlings."

It does not appear that this ruling of the department was ever modified or revoked up to the time of the present importations, although similar tariff provisions are to be found in the tariff acts of 1883, 1890,

1894, 1897, and 1909. In each of those acts rye flour eo nomine was subjected to duty, while no eo nomine enumeration of rye shorts or rye middlings appeared in any of them, and each contained a provision for nonenumerated manufactured articles.

In the tariff act of 1913 for the first time rye flour eo nomine was given free entry. And we repeat that so far as we are aware, from the date of the Treasury instructions above copied to the time of the latter enactment, this commodity was held without question or dispute to be entitled to, and was given, the classification of rye flour when imported and assessed with duty, although during all of that time a different rate of duty, which apparently was invariably higher than the eo nomine rate, would have been assessable upon it had it been classified for assessment as a nonenumerated manufactured article.

Under the tariff act of 1913, the board, in T. D. 37471 (G. A. 8121), announced a decision to the effect that rice bran, rice shorts, and rice middlings were dutiable as nonenumerated manufactured articles. Following this came the present importations, and the collector of the port addressed the following communication to the board concerning them:

> The inclosed protests cover a number of importations of rye middlings which is a commodity that is frequently imported into this district and into the district of North Dakota. It was formerly classified as free of duty, but in view of the principle laid down in T. D. 37471 it was thought advisable to classify the article in dispute as a nonenumerated manufactured article, assessing duty at 15 per cent under paragraph 385 of the present tariff act, and as I feel that it is quite important that a decision be rendered in this case as soon as possible I would respectfully request that the same be placed upon the docket for the next hearing to be had at Minneapolis.

The foregoing statement of the collector that the merchandise "was formerly classified as free of duty," manifestly relates to the period of time following the enactment of the tariff act of 1913, under which act, it may be repeated, "rye flour" was first placed eo nomine in the free list. The statement of the collector finds support in the testimony of one of the witnesses who tells of importations then made by him which were admitted free of duty. It is fair to assume that this action was taken in conformity with the long-continued practice of the department in classifying the article under the eo nomine designation of rye flour, which after being long dutiable under former acts had become free of duty under the act of 1913.

Under these circumstances we think that the long-continued and unquestioned departmental classification of this product as rye flour for tariff purposes, which classification itself does not appear to be arbitrary or unreasonable, and the implied approval and adoption thereof by Congress in the reenactment of the applicable provisions of the law in essentially similar terms, should have the effect and

consequence of establishing the status of the article for tariff purposes and that this should prevail until changed by legislative action.

We think too that this construction gives effect to the true intent of Congress when it placed "rye and rye flour" upon the free list of the act of 1913. There is no apparent reason for believing that Congress actually intended by that enactment to admit rye and rye flour to entry free of duty, and at the same time to deny free entry to the present rye product. It may be argued indeed that Congress at the time simply overlooked this commodity altogether, but we think it is more reasonable to believe that when it came to deal with the subject of rye and rye flour Congress acted with the knowledge that this rye product had long borne the tariff classification of rye flour, and intended that it should have free entry under that name. Accordingly we hold that the commodity is rye flour within contemplation of the act and is entitled to free entry as such.

In support of this conclusion we quote as follows from the decision of the Supreme Court in the case of Komada *v.* United States (215 U. S., 392, 396):   ·

Something can be said on both sides of the question of similarity, and if the case turned simply upon that question it might be difficult to reach a satisfactory conclusion. In such a case the construction given by the department charged with the execution of the tariff acts is entitled to great weight. As said by Mr. Justice McKenna, delivering the recent opinion of the court in United States *v.* Hermanos (209 U. S., 337, 339):

We have said that when the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution.—Robertson *v.* Downing (127 U. S., 607); United States *v.* Healey (160 U. S., 136). And we have decided that the reenactment by Congress, without change, of a statute which had previously received long continued executive construction is an adoption by Congress of such construction.—United States *v.* Falk (204 U. S., 143, 152).

We quote also from the decision of Montgomery, Presiding Judge, in the case of Salomon *v.* United States (2 Ct. Cust. Appls., 92, 95; T. D. 31635):

The rule that language employed by Congress is presumed to have been used in accordance with the construction which has been given it by long-continued practice of an administrative department or by a court is thoroughly established. See Shallus *v.* United States (1 Ct. Cust. Appls., 556; T. D. 31552) and cases cited; United States *v.* Myers (1 Ct. Cust. Appls., 257; T. D. 31301); Komada *v.* United States (215 U. S., 392).

We find additional support for this conclusion in the well-established rule that when an issue stands at an even balance after a consideration and comparison of all other bases of judgment in the case, the importer. is entitled to prevail.

In accordance with the foregoing views the decision of the board is reversed, and the case is remanded for judgment in accordance herewith. *Reversed.*