UNITED STATES *v.* COMPANIA AZUCARERA DEL CAMUY, INC. (No. 4909) [1]

United States Court of Customs and Patent Appeals, November 22, 1957

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

*F. M. Susoni, Jr.* for appellee.

[1] C. A. D. 664.

[Oral argument October 8, 1957, by Mr. Welsh; submitted on brief by appellee.]

Before Johnson, Chief Judge, and O'Connell, Worley, Rich, and Jackson (retired), Associated Judges

Johnson, Chief Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, entered pursuant to its decision (C. D. 1823), sustaining a protest against the collector's classification and duty assessment of merchandise described on the consular invoice as "286 ' barrels Sugar Cane Slings."

The collector classified this merchandise as "chains of iron or steel, ⁷⁄₁₆" diameter" under paragraph 329 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and imposed duty thereon at the rate of one-half of one cent per pound.

The importer, appellee here, claimed by its protest that the merchandise was properly enterable duty-free as agricultural implements under the provisions of paragraph 1604 of said Act.

Paragraph 329, followed by the President's modification in T. D. 51802, reads as follows, insofar as pertinent:

*Chain and chains of all kinds, made of iron or steel,* not less than three-fourths of one inch in diameter, seven-eighths of 1 cent per pound; less than three-fourths and not less than three-eighths of one inch in diameter, 1⅛ cents per pound; * * * *Provided, That all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made, or of which chain is the component material of chief value.* (Emphasis added.)

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 329 | Chain and chains of all kinds, made of iron or steel: Not less than three-eighths of one inch in diameter. | ½¢ per lb. |
| * | *     *     *     * | *    * |

Paragraph 1604 reads:

Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided, That no article specified by name in Title I shall be free of duty under this paragraph.* (Emphasis added.)

No testimony was taken at the trial, all the facts having been agreed to by stipulation of the parties. It was stipulated that the sugar cane slings here involved are used exclusively for the manu-

facture of sugar and that this is the only known use. Two items were introduced into evidence, one being an illustrated pamphlet setting forth a description of the merchandise and the manner of use thereof (plaintiff's Exhibit 1), the other being a sample of one of the imported articles (plaintiff's Exhibit 2).

Exhibit 1 indicates that each article consists of two parts:

   (1) a heavy steel chain with a large ring secured to each end of the chain.

   (2) a steel housing essentially comprising a pulley element at one end thereof and a hook at the other. Latch and locking elements are also suitably located in the housing.

When not in use, the two parts are so arranged that the chain passes through the housing in proximate relation to the pulley.

In use, two or three slings are laid loosely across the cart to be filled with the bundle of sugar cane. When the cart has been loaded, one of the rings attached to the ends of the chain is placed over the hook described *supra*. The other end of the chain is pulled taut (the pulley facilitating free movement thereof). At the transfer point, the ring on the loose end of the chain is hooked onto a crane and the bundle lifted from the cart. The various locking and latch elements insure the tightening of the chain around the bundle and the proper release of the chain when this is desired.

There is no dispute as to the facts in this case, all the facts having been stipulated as aforesaid. The question before us, therefore, is solely one of law: whether the merchandise, which consists of articles which are indisputably manufactured in chief value of chain and which are agreed to be agricultural implements (by necessary inference from the stipulations made), is dutiable under paragraph 329, as modified, or free of duty under paragraph 1604.

As shall presently be seen, the controversy may be further narrowed, for the legal question reduces itself to which of two provisos governs the disposition of the merchandise. It will be noted that paragraph 329 contains the proviso that:

* * * all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made; or of which chain is the component material of chief value.

Paragraph 1604 contains the proviso that:

* * * no article specified by name in Title I shall be free of duty under this paragraph.

It is appellant's contention that each of the articles may be properly classified as "chains," despite the additional housing and mechanisms contained therein which accompany each chain to make up the dutiable entity, and that it is therefore specified by name in Title I (as required by the proviso in paragraph 1604); that, "[e]ven if it were to be held

that the provision for 'chains' is not a sufficient naming of the sling chains herein to exclude them from paragraph 1604 under the proviso in that paragraph, they are certainly articles manufactured in chief value of chain and consequently the proviso clause of paragraph 329 excludes them from free entry." Appellant also relies upon section 201 of the Act (the introductory section of Title II, the Free List), *infra*, to further substantiate the latter argument.

Appellee argues simply, and the court below agreed with its contention, that the proviso in paragraph 1604 governs and that since the items in question are not "specified by name" in paragraph 329, they are properly duty-free.

While the solution to our problem has been complicated by the apparently equally compelling provisos found in the competing paragraphs, we are of the opinion that the collector's classification was improper as a matter of law and that the decision below must be affirmed for the reasons to follow.

Appellant, in support of its argument that the instant slings are "specified by name" as "chains" in paragraph 329, cites *C. J. Tower & Sons v. United States*, T. D. 41118, 48 Treas. Dec. 220; *United States v. J. A. Freeman & Son*, 29 C. C. P. A. (Customs) 103, C. A. D. 177; *United States v. Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079; *Schneider Bros. & Co. v. United States*, 13 Ct. Cust. Appls. 519, T. D. 41392; *Schoemann & Mayer, Inc. v. United States*, (C. D. 630) 8 Cust. Ct. 325; *United States v. Sears, Roebuck & Co.*, 20 C. C. P. A. (Customs) 295, T. D. 46086; and *Charles T. Wilson Co., Inc. v. United States*, 38 C. C. P. A. (Customs) 19, C. A. D. 433.

In the *Tower* case, *supra*, the Board of General Appraisers held that automobile tire non-skid chains were properly dutiable under the provisions of paragraph 329 of the Tariff Act of 1922 as "chains." Each chain had a large link attached thereto at one end and, at the other end, a bar and thumbscrew. There were also other elements attached thereto, apparently for purposes of fastening the chain about the tire to which it was to be attached. In the course of its opinion, the Board stated:

It will be observed that the paragraph provides not only for "chain" in the form of material, but also for "chains of all kinds, made of iron or steel," thereby indicating a purpose to include in the latter provision the various articles which are commercially designated as "chains" of different kinds, as distinguished from the mere material chain. This intent is evidenced by the fact that the proviso mentions "articles manufactured wholly or in chief value of chain." There are in commerce many chains, each of which may be constructed and designed for a specific use and which may be equipped with special hooks, swivel, or other connecting devices, but all of which are commercially dealt in as chains of some particular designation, such as the present truck chains. We see no reason why such chains should be excluded from said paragraph, especially in view of the broad provision for "chains of all kinds, made of iron or steel." It is a matter of common knowledge that virtually all chains devoted to specific uses have some

special link, ring, hook, swivel, or similar device to permit fastening the chain to the object. We can not believe that Congress intended to exclude every such chain from the provision for "chains of all kinds," merely because of the presence thereon of the fastening device. If such interpretation should be given the provision, practically all chains, as distinguished from chain used as material, would be eliminated, and the number of such chains used in the different trades and industries is legion. In fact, the provision would be rendered almost wholly inoperative and meaningless. * * *

While this decision is not binding on this court and while the basis for the reasoning set forth above was recently refuted (the words "chain" and "chains" were held to be synonymous) in *United States v. Henry Greenberg & Bros. Export & Import Co., Inc.*, 44 C. C. P. A. (Customs) 48, C. A. D. 636, there is still another reason why this reasoning is inapposite to the instant case. Though we do not doubt that the duty classification of all articles manufactured wholly or in chief value of chain would be embraced by the proviso in paragraph 329, there is most obviously some outer limit beyond which an item will not be deemed to be embraced within the *eo nomine* provision for "chains" in said paragraph (as distinguished from being dutiable at the same rate as said chains by virtue of the proviso). Thus, though articles be manufactured in chief value of chain, it would be idle to assert that *all* such articles, regardless of what mechanisms or additions were associated therewith to form the entity, were still "chains" (though they might, as aforesaid, be dutiable at the same rate as "chains"). Were it otherwise, it would be necessary to conclude that Congress performed an idle task when it added the proviso to the chain paragraph in the Tariff Act of 1922.

In this connection, certain language appearing in a brief filed before the Senate Committee on Finance on the proposed Tariff Act of 1921 (which eventually was passed as what we know as the Tariff Act of 1922) is significant. *Hearings Before the Committee on Finance of the Senate on the Proposed Tariff Act of 1921*, 67th Cong., 2d Sess., at 1832–1838. The brief was filed by David S. Day, representing the chain manufacturing companies. Particularly in point is language in a supplemental brief, which brief was originally filed with the Ways and Means Committee of the House of Representatives in connection with the same proposed legislation but which was not made a part of the record hearings of that body. Such language, appearing at page 1836 of the Senate hearings, is as follows:

In the drafting of this article, attention is also called to the fact that chain is not imported alone in its crude form but imported already assembled in various articles of manufacture. Under the tariff act of 1909, there is a ruling that assembled surveyors' chains should be classified as chain, and possibly this interpretation would be applied to other articles. *It is suggested, however, that this point be directly covered by the phraseology of the section applying to chain generally.* (Emphasis added.)

There is submitted the following recommendation as to the terms of this section:

\*       \*       \*       \*       \*       \*       \*

All articles manufactured wholly or in chief value of chain shall not pay a less duty than that imposed upon the chain of which it is made, or of which it shall be the component thereof in chief value.

It is to be noted that the proviso which was finally included in paragraph 329 of the Tariff Act of 1922 [which language, incidentally was the same used in the first draft of the bill (H. R. 7456) introduced by Mr. Fordney in the House of Representatives on June 29, 1921, which bill was referred to the House Committee on Ways and Means] is couched in terms almost identical to those suggested in the afore-mentioned brief. Such a proviso had not appeared in paragraph 126 of the tariff act of 1913 (the predecessor of paragraph 329 of the Tariff Act of 1922). The foregoing, we feel, is confirmatory of the view we have taken as to the intent of Congress relative to the limits of the *eo nomine* provisions for "chains" (etc.) and the purpose of the proviso in paragraph 329. Since the proviso in paragraph 329 of the Tariff Act of 1930 is a substantial reenactment of its predecessor in the Tariff Act of 1922, the foregoing analysis of Congressional intent is apposite to the instant case.

We are of the opinion, therefore, that, regardless of whether auto-mobile tire non-skid chains are *eo nomine* provided for in paragraph 329 (as the predecessor of this court in customs jurisdiction appears to have held in the *Schneider Bros.* case, *supra*, wherein paragraph 329 of the Tariff Act of 1922 was construed), the slings here involved are not so provided for. They are much more than chains. As aforesaid, each sling is equipped with a special pulley mechanism, as well as various latches and locks. The presence of these elements alone is sufficient to distinguish this case from the *Tower* and *Schneider* cases, *supra*, as we are not faced here with the addition to chain of *mere* connecting devices. Also distinguishable for this reason are the *Schoemann & Mayer* case, *supra*, (wherein were involved dog chains, composed of links of iron or steel, with a swivel and a snap at one end and a swivel and leather loop at the other) and the *Horstmann* case, *supra*, (wherein were involved saber chains, with a snap on one end and a snap and hook on the other end). The *Horstmann* case, *supra*, is distinguishable for other reasons, not necessary to mention, as well.

The *Freeman* case, *supra*, is also distinguishable from the case at bar. That case, arising under the Tariff Act of 1930, involved an importation of certain steel balls, roller bearings, chains, rivets, bolts and nuts. The competition with respect to each of the items was between paragraph 1604 (the agricultural implement paragraph) and various specific paragraphs in Title I. The only portion of that case which is here relevant concerned the classification of the chains. The court, assuming that the chains could be used only on a Milwaukee

mower (viz: as parts of agricultural implements), nevertheless concluded that they were specified by name in paragraph 329 as "chains of iron or steel, used for the transmission of power * * *," and were therefore not free of duty under paragraph 1604. The difference between that case and this case is, we feel, readily apparent. There, the chains in question were specifically named as such in paragraph 329. Here, as pointed out heretofore, the slings are not specified by name but only fall within the purview of paragraph 329 by virtue of the proviso therein. For this reason, the *Freeman* case is not controlling in the instant case.

If the instant merchandise is to be classifiable under paragraph 329, therefore, it must be by virtue of the proviso in that paragraph. As aforesaid, the terms of this paragraph are set forth in language which, on its face, is as positive and all embracing as that of the proviso in paragraph 1604. Depending upon which proviso one happens to look at first, one may arrive at different results. We have searched the legislative history of the tariff acts in vain for the solution to our problem. It is as well clear that the rules of relative specificity can not aid us. We do feel, however, that the reasoning in several cases, to be hereinafter discussed, is in point and leads to the correct solution of the issue before us.

In *United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, T. D. 40693, the court, in construing in paragraph 1504 of the Tariff Act of 1922 (the predecessor of paragraph 1604), stated:

> The purpose which Congress had in enacting paragraph 1504 must be borne in mind. Obviously, it was to give to agriculture any advantage which there might be in the free importation of the implements and machinery of agriculture and their parts. To hold, as contended for by appellant here, would be to do violence to such intention. It would result in the imposition of duties on the importation of every cutting part of an agricultural machine imported, although not specially named for dutiable purposes in the act, whether it was a plow share, a sickle section for a mower or reaper, a rolling cutter, a blade for a stalk or ensilage cutter, or any other part of such a machine which might happen to have a cutting edge or surface. We can not adopt such a construction. The evident intent to benefit agriculture should be effectuated. * * *

This language was reaffirmed in the *Freeman* case, *supra*.

And in *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, 286, T. D. 49395, this court said in reference to paragraph 1604:

> * * * An examination of the pertinent authorities, however, discloses that the courts have always given agricultural free list provisions like the one at bar, and many other tariff enactments which were intended to benefit agriculture, a very broad and liberal construction so that the evident purpose of Congress especially to favor agriculture might be carried out. * * *

In view of the strong and positive urgings of the predecessor of this court in the *American Express* case to liberal interpretation of paragraph 1504 of the Tariff Act of 1922 and in light of Congress' reenact-

ment of this paragraph in identical language as paragraph 1604 of the Tariff Act of 1930, we see no reason to depart from such a broad and liberal interpretation thereof at this point. The views expressed in the *Perry* and *Freeman* cases are confirmatory of our position. We are compelled, therefore, to give maximum weight to the proviso in paragraph 1604 and to conclude that unless the agricultural implements involved are, in fact, "specified by name" in Title I, they may enter this country duty-free. Certainly the broad language of the proviso in paragraph 329 does not so specify the imported slings. by name.

Language at least as sweeping as that in the proviso of paragraph 329 has been held by this court, in the *Perry* case, *supra*, to be limited before. In that case this court held that the provision in paragraph 31 (b) (2) of the Tariff Act of 1930 for "*All* compounds of cellulose * * * made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for, * * *" was not such a specification by name as to take celluloid poultry leg bands out of paragraph 1604 of the same Act. In the course of its opinion the court said, at page 290:

* * * It will be noticed that the proviso says: "specified by name." The phrase "not specially provided for" was not depended upon by Congress, as is so frequently the case in the enactment of tariff paragraphs, to bring about the result desired. In order for it to be taken out of the agricultural implement paragraph by other provisions it was necessary that it had to be "specified by name" in some provision of title I.

To hold that the term "all compounds of cellulose * * * made into finished * * * articles" is specifying celluloid poultry leg bands by name, would, in our opinion, unduly restrict the application of the very broad phrase in paragraph 1604 "and all other agricultural implements of any kind or description." We do not think that when Congress used the term "specified by name" it used it synonymously with "provided for." The term "all compounds of cellulose * * * made into finished * * * articles" is quite general in its scope. There are many different kinds of compounds and many different kinds of compounds of cellulose. To name a general class such as is done in paragraph 31, *supra*, is not to specify an article by name, within the meaning of paragraph 1604.

See also *United States* v. *Harper*, 2 Ct. Cust. Appls. 101, T. D. 31655, where embroidered silk fans were held not to be dutiable by virtue of the proviso in paragraph 339 of the tariff act of 1897 to the effect that "* * * *no* wearing apparel or other article or textile fabric, *when embroidered* by hand or machinery, shall pay a duty at a less rate than that imposed in any schedule of this Act upon any embroideries of the materials of which such embroidery is composed." (Emphasis added.)

Were there any doubt as to the proper disposition of this case, we would nevertheless be constrained to rule in favor of appellee, for it is well established that when an issue stands at an even balance after a consideration and comparison of all other bases of judgment in the

case, the importer is entitled to prevail. *Osceola Mill & Elevator Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 139, T. D. 38938.

Section 201 of the Tariff Act of 1930, which is the introduction to Title II, the Free List, and which provides:

That on and after the day following the passage of this Act, *except as otherwise specially provided for in this Act,* the articles mentioned in the following paragraphs, when imported into the United States * * * shall be exempt from duty. (Italics ours.)

does not alter the conclusion we have reached. The italicized clause does not limit itself to Title I but refers to the entire Act. It therefore directs our attention as much to the proviso in paragraph 1604 as it does to the proviso in paragraph 329 and leaves us in the same dilemma that we faced prior to our consideration of this case.

The other cases cited by appellant are not in point and will, therefore, not be discussed.

For the aforementioned reasons, the decision of the Customs Court is *affirmed.*

JACKSON, J., Retired, recalled to participate.